No. 25-3041

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA
Plaintiff-Appellee,

v.

DAN EDWIN WILSON
Defendant-Appellant.

On Appeal from the United States District Court
for the District of Columbia

United States District Court No. 23-cr-427, 25-cv-545

---

APPELLANT'S UNOPPOSED EMERGENCY MOTION FOR STAY
PENDING APPEAL PURSUANT TO FRAP 8(c)

---

GEORGE T. PALLAS, P.A
Counsel for Dan Edwin Wilson
Bar No: 65943
2420 SW 22nd Street
Miami, FL 33145
305-856-8580
305-860-4828 FAX
george@pallaslaw.com
By:/s/ *George T. Pallas*
GEORGE T. PALLAS, ESQ

Attorneys for Defendant-Appellant
DAN EDWIN WILSON

## I. INTRODUCTION

Because Dan Edwin Wilson is neither a danger to the community nor a flight risk, the court below, more than once, and the government both below and now before this Court, have agreed to allow him to remain at liberty while the court system decides the thorny issue which will determine his future.

Wilson was first contacted by law enforcement over four (4) years ago when he agreed to be voluntarily interviewed by the FBI in March 2021. Later, his home in Kentucky was searched pursuant to a warrant in June 2022. Once indicted, he was released from custody at his initial appearance in the Western District of Kentucky on February 1, 2023, and has remained at liberty for the entirety of his district court proceedings, which have lasted close to two (2) years. He was remanded into custody at his sentencing on August 28, 2024, and remained there until January 21, 2025, when the Bureau of Prisons (BOP), he submits correctly, released him pursuant to President Trump's pardon.

On appeal he intends to raise the serious and substantial issue about the constitutionality of his continued detention for conduct which both he and the government have agreed is covered by the Presidential pardon dated January 20, 2025. Therefore, this Court should grant a stay, as the trial court below did while deliberating this issue. Undersigned counsel is authorized to represent to this Court that the government/appellee does not oppose this stay.

Wilson is currently out of custody pursuant to a series of stays issued by the District Court. He has been ordered by U.S. Probation to report to prison on **Wednesday, April 2, 2025, at 2 p.m.**

## II. STATEMENT OF JURISDICTION

Mr. Wilson brings the instant motion for stay pending appeal pursuant to Federal Rule of Appellate Procedure 8(c). The Court has jurisdiction in this appeal pursuant to 28 U.S.C. § 2253.

## III. RELEASE STATUS

Mr. Wilson is currently out of custody, living with his mother in the Western District of Kentucky. He has been ordered to report to FCI Beckley, located at 1600 Industrial Road, Beaver, WV 25813 on **Wednesday, April 2, 2025, no later than 2 p.m.**

## IV. STATEMENT OF THE CASE

Dan Edward Wilson was identified by the FBI as being present at United States Capitol Building on January 6, 2021. On **March 9, 2021**, he was voluntarily interviewed by the FBI regarding his travel to and presence at the United States Capitol. Consequently, on **June 3, 2022**, a warrant was issued authorizing the search of his home in Kentucky for items related to his travel to and conduct at the Capitol. Law enforcement seized pieces of clothing that appeared to match what Wilson wore at the U.S. Capitol on January 6, 2021. Law

3

enforcement also seized six (6) firearms from his residence which were stored in a backpack and in a closet in the residence.

Mr. Wilson has three (3) prior felony convictions, the most recent being **almost thirty (30) years ago in 1997**. Two of the firearms located in his residence did not have serial numbers.

Wilson was subsequently charged with a violation of 18 U.S.C. § 922(g)(1) (possession of firearm by a prohibited person) and with a violation of 26 U.S.C. § 5841 (possession of an unregistered firearm).

Mr. Wilson made his initial appearance in the Western District of Kentucky on the indictment on **February 1, 2023**, and was released on an unsecured bond in the amount of $10,000.

On **June 8, 2023,** Wilson appeared for his initial appearance in the District of Columbia on a criminal complaint alleging several offenses committed at the Capitol on January 6, 2021. He was released on a Personal Recognizance Bond. (ECF 9).

On **May 16, 2024**, Wilson consented to the transfer of his Kentucky firearm case to the District of Columbia and on **May 20, 2024**, pursuant to a plea agreement with the government, he pleaded guilty to one count related to January 6 and the two firearm offenses from Kentucky. He remained on personal recognizance until his sentencing on **August 28, 2025.**

At sentencing, the Court imposed three concurrent terms of **60 months'** imprisonment for each of the three offenses to which Wilson pled—the January 6 conspiracy offense and the two Kentucky firearm offenses. Wilson did not file a notice of appeal, and the court's judgment became final.

On January 20, 2025, the President issued "*a full, complete and unconditional pardon* to. . . individuals convicted of offenses *related to* events that occurred at or near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025) ("Presidential Pardon" or "pardon") (emphasis added). The Bureau of Prisons (BOP) was notified and the next day, Wilson was released from custody. Wilson then moved the Court to stay any order from the Bureau of Prisons to re-incarcerate him until the Court could determine whether the Presidential Pardon covered the Kentucky firearm offenses. The court granted the stay but subsequently held that the pardon did not apply to Wilson's Kentucky case.

On **February 24, 2025**, the Wilson filed the instant 28 U.S.C. § 2255 motion seeking vacatur of the Court's judgment on the ground that the Presidential Pardon covers his firearms offenses. The next day, the government filed its response, agreeing with Wilson (after initially opposing) that the pardon covers his Kentucky charges.

The Court held a hearing on the defendant's motion on **February 26, 2025**.

Dan Wilson attended that hearing via Zoom. At that time, the prosecutor defending the government's position reiterated that the government agrees that the pardon covered Wilson's Kentucky offenses based on "further clarity about the presidential intent of the pardons."

Nevertheless, the District Court denied the motion on **March 13, 2025,** although the court did issue a Certificate of Appealability (COA) as to the substantial issue presented in this case. The court vacated its previously issued stay which is the subject of this motion.

## V. ARGUMENT
### A. The district court erred in denying Mr. Wilson's continued stay of sentence pending appeal.

Rule 8(c), Federal Rules of Criminal Procedure governs a stay of sentence pending appeal. That provision refers to Rule 38, Federal Rules of Criminal Procedure. The Committee Note to Rule 38(2) states as follows: "The criteria for the stay of a sentence of imprisonment pending disposition of an appeal are those specified in rule 9(c)…" Title 18 U.S.C. 3143(b)(1) (Release or detention pending appeal by the defendant), allows for release of a defendant pending appeal where the defendant shows:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

(i) reversal,
(ii) an order for a new trial,
(iii) a sentence that does not include a term of imprisonment, or
(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Release pending appeal is warranted where "the appeal raises a 'substantial question' of law or fact that is 'fairly debatable,' and[,] [] 'if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.'" *United States v. Wetselaar*, 2017 WL 6514650, at *1 (9th Cir. Nov. 7, 2017) (quoting *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985)). An appeal raises a 'substantial question' if it presents a close question or one that very well could be decided the other way. *United States v. Eaken*, 995 F.2d 740, 741 (7th Cir. 1993) (citing *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986) (internal citations omitted)).

Application of the presidential pardon would, in the entirety, erase Wilson's Kentucky charges. The trial court recognized the substantial nature of this issue by issuing its Certificate of Appealability. It is indisputably a close question.

Mr. Wilson meets both prongs of the analysis under section 3143(b)(1).

**1. Mr. Wilson is not a flight risk or danger to the community, as demonstrated by his years of success on pretrial release.**

Mr. Wilson was out of custody for the pendency of his district court case. His compliance with the conditions of his release over the past two years

7

demonstrates that he is not a danger to the community. His appearance at all required proceedings in this case, from start to finish, shows that he is not a flight risk. The district court apparently agreed by extending the stay, more than once, while the court carefully deliberated the issue.

> **2. Wilson's appeal regarding the interpretation of the Executive Order raises a "fairly debatable" issue that would result in Mr. Wilson's sentence being vacated.**

Courts have rarely been in a position to interpret executive pardons. However, when the occasion arises, courts look to the plain language and the apparent intent behind the pardon. *See United States v. Matassini*, 565 F.2d 1297, 1302 (5th Cir. 1978) ("[T]he state pardon granted to Matassini did contemplate the removal of virtually all collateral disabilities flowing from Matassini's 1950 conviction. . . . We [interpret the pardon] in light of the effect that the pardon was *intended* to have under Florida law, the language and legislative history of Title VII, and the applicable canons of statutory construction.") (emphasis added); *Fletcher v. Graham*, 192 S.W.3d 350, 359 n.19 (Ky. 2006) ("The Governor's use of the word 'or' clearly *intends* to establish two subsets of the class of pardoned persons ....... ") (emphasis added); *Abson v. State*, 139 Tex. Crim. 416, 418 (1940) ("[I]t is apparent that it was the *intention* of the Governor to pardon Matura of that offense.") (emphasis added). In considering the plain language of a pardon, courts have interpreted the language broadly in favor of the potential recipient. *See*

*Fletcher*, 192 S.W.3d at 359 n.19 ("'[A] pardon is to be taken most beneficially for the recipient and most strongly against the authority by which it is granted, whenever its meaning is in doubt.'") (quoting *Ex parte Paquette*, 112 Vt. 441 (1942)); *Ex parte Eggleston*, 234 P. 970, 971 (Kan. 1925) ("Cases collected in a recent note [citation omitted] show a variation from a very strict to a quite liberal construction of the language of a pardon, with a modern tendency, as might be expected, towards liberality.").

The plain terms of the pardon, as well as the apparent intent of the pardon, show that Mr. Wilson is indeed covered by it, and that the district court erred in concluding that he was not. To begin, the Executive Order uses broad language to discuss the pardoned offenses, including within its reach not only offenses arising from events at or near the Capitol on January 6, 2021, but also offenses ***"related to"*** those events. Viewed conversely, can it seriously be said that Wilson's convictions for possessing firearms are ***not related to*** those events, where, but for the January 6 investigation, officers would never have searched Wilson's Kentucky home?

Looking to the Order as a whole, the clear intent of the pardon was to cover Mr. Wilson's instant offense. The preamble states that the pardons are being issued to "end a grave national injustice that has been perpetrated upon the American people over the last four years . . . ." That injustice, ***lasting four years***,

9

reasonably included the criminal investigation and prosecution of persons present at the Capitol on January 6, 2021 over the past four (4) years. Had the President meant something narrower, he would have specified. For instance, the preamble could have simply stated that its purpose was 'ending the injustice of imprisoning people for their actions on January 6.' The broader language chosen by the President covers Wilson's instant offense, since the criminal investigation and prosecution of Wilson involved the search warrant executed at his home, ***within the last four (4) years,*** led to the instant charges.

Making its intent clearer, the Executive Order names fourteen individuals, including a Mr. Jeremy Bertino. *Id.* p.4. The docket for Mr. Bertino's case show that he was convicted of seditious conspiracy on January 6, 2021, as well as being a felon in possession of firearms (18 U.S.C. § 922(g)(1)) for weapons possessed later – on March 8, 2022. (Statement of offense, D.D.C. Case no. 1:22-cr-00329-TJK). He waived venue and pleaded guilty to both offenses in the District of D.C., however he possessed the firearms at his home in North Carolina. *Id.* Exactly like Mr. Wilson's case, the firearms were found when officers executed a search warrant for evidence of Mr. Bertino's involvement with January 6. The full pardon of Mr. Bertino shows that the broad intent of the Executive Order was to cover cases like Mr. Wilson's.

Offenses "related to" events on or near Capitol Hill have actually, in fact,

been prosecuted – and now are clearly dismissed – despite being far from the U. S. Capitol and on different dates. Defendant Daniel Ball was pardoned for his January 6 case in the District of Columbia. When his home in the Middle District of Florida was searched and weapons discovered on May 22, 2023, he was indicted in that district. *United States v. Ball*, 24-cr-97-TPB. However, that case was dismissed pursuant to the presidential pardon. Likewise, January 6 defendants Guy Reffitt (United States v. Guy Wesley Reffitt, 4:22cr289 Western District of Texas) and Zacariah Sattler (United States v. Sattler, 1:23-cr-00438 District of Maryland) have had their firearms offenses dismissed under the very same circumstances and for the very same reason.

It is, at the very least, "fairly debatable" whether Mr. Wilson has been pardoned and therefore bail pending appeal is appropriate on this issue as well.

## VI. CONCLUSION

For the reasons set for the above, this Court should grant Mr. Wilson's unopposed motion for stay of sentence pending appeal.

Dated: March 28, 2025

Respectfully submitted,

GEORGE T. PALLAS, P.A
Counsel for Dan Edwin Wilson
Bar No: 65943
2420 SW 22nd Street
Miami, FL 33145

305-856-8580
305-860-4828 FAX
george@pallaslaw.com
By:/s/ *George T. Pallas*
GEORGE T. PALLAS, ESQ.