**THIS CASE HAS NOT BEEN SET FOR ORAL ARGUMENT**

**THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 25-3041**

_____

**UNITED STATES OF AMERICA,**                    **Plaintiff/Appellee,**

    **v.**

**DAN EDWIN WILSON,**                    **Defendant/Appellant**.

## APPELLANT'S OPPOSED MOTION TO AMEND THE BRIEF SCHEDULING ORDERS IN DOCUMENTS #2123693 AND #2132214

Appellant, DAN EDWIN WILSON, through undersigned counsel, respectfully moves this Court, pursuant to Federal and Circuit Rules of Appellate Procedure 27, 28, 29, 32(c), and 43, to issue an amended Scheduling Order modifying Documents #2123693 and #2132214 to include the due date for the Government's Appellee Brief, to clarify that the appointed amicus curiae is not acting as a special prosecutor in place of the Government and does not stand-in as substitute for the Government; and that the amicus curiae is not a party and is appointed for the purpose of assisting the Court in understanding the law used *on the record* in the lower court's Memorandum Order and Opinion (Doc. 2108266 17-37) regarding the Presidential Pardon at issue. The Government opposes and via email conveyed itself as no longer the Appellee party. The amicus opposes by requiring

excess time after Appellant's brief as originally allowed when its purpose should be solely to offer legal insight and explanation for assistance to this Court about what the lower court judge wrote *on the record* in her Order and Opinion – and where amicus brief should be delivered on or at most by 7 days after Mr. Wilson's brief as a non-party. Mr. Wilson supports this Motion as follows:

## I.      FACTS AND PROCEDURAL BACKGROUND

This  case is an appeal of a denied §2255 Motion to vacate or set aside the sentence for Mr. Wilson's January 6, 2021, related offense based upon a Presidential Pardon. Mr. Wilson is imprisoned despite U.S. Attorney General's office (as the January 6 Pardon's executing authority specified in Pardon Proclamation 10887) having clarified on behalf of President Trump that the pardon applied to Mr. Wilson – and having instructed the acting D.C. U.S. Attorney to correct the February 6, 2025, mistake of interpreting the pardon where the AUSA had no such authority to declare that it didn't apply to Mr. Wilson's gun charges. 1:23-cr-00427-DLF (herein "D.D.C. case") at ECF No. 103. There was no disagreement among the parties when the United States (U.S.) wrote on February 25, 2025, that Mr. Wilson was pardoned and should not be imprisoned. D.D.C. case ECF No.108. The lower court interpreted the pardon as not applying to Mr. Wilson's gun possession charges.

The FBI conducted a January 6 offense search in June 2022, with general search warrant language for "any evidence of a crime," after Mr. Wilson admitted in

a voluntary March 2021 interview to being at the U.S. Capitol and showed pictures of himself, along with the FBI's having gathered social media confirmation of his presence. As part of the search in the Western District of Kentucky, the FBI seized firearms and ammunition. Appellant had 25+ year-old non-violent felonies which did not involve any use of a firearm.

The gun charge indictment wasn't brought in Kentucky federal court until January 2023 in a decision by the DOJ to separate the charges from those brought in D.C., despite the common January 6th search warrant. Upon request by Defendant Wilson's counsel, the gun charges were transferred to the U.S. District of Columbia court to be resolved concurrent with and as related to his January 6 charges. His sentencing criminal history was "0." Nevertheless, he was given a sentence of 5 years in prison (above the USSG guidelines range and Probation Officer's recommendation) as the Government reneged on the agreed upon plea agreement estimate and language; and in its sentencing memorandum that for all the charges demanded a longer sentence with an unsupported upward departure in the single sentencing hearing. He was sentenced to 60 months' imprisonment, concurrent on all charges on August 28, 2024.

Mr. Wilson was pardoned by the President on January 20, 2025, and released from custody. He alleged and the D.C. DOJ agreed (after mistakenly and without authority, writing otherwise a few weeks earlier) that all the offenses of conviction

were covered by the Pardon issued on January 20, 2025, by the incumbent President of the United States in Proclamation 10887.

The lower court created its own interpretation of the President's Pardon and held in its Opinion that it didn't apply to the gun possession charges despite there being no prior (to the search) investigation, and no gun use in any past crime. As ordered, Mr. Wilson dutifully reported back to prison at FCI Beckley, WV on April 2, 2025. This Court denied his Motion for stay of his report (release pending appeal). (Doc. #2109093), in a 2-1 decision.

The issues for appeal will include whether the judge can: 1) overrule the U.S. Attorney General and President about the applicability of a pardon; 2) interpret a Presidential pardon when no party raised a controversy about it as of February 25, 2025; 3) create a case controversy; 4) declare that the President's pardon didn't apply by citing law applicable to deference and execution *of legislation* by executive agencies; and 5) deny Mr. Wilson's liberty when he was pardoned.

This Court relied upon the lower court's Order and Opinion, (and its cited caselaw that denied Mr. Wilson's §2255 Motion) where without use of amicus curiae this Court denied Mr. Wilson's emergency motion for stay and release pending appeal. Doc. #2109093. The Court appointed an amicus (Doc. #2123693) without any Government motion or consultation, based solely on a letter to the clerk from

D.C. U.S. Attorney Pirro (prior to filing any brief) that stated the Government would not defend the lower court ruling. Document #2118045.

This Court's Order for amicus to "defend" the district judge's ruling without even scheduling or receiving the Government's brief as Appellee (Doc. #2132214), while listing the amicus as if they are a party, is highly objectionable as it portends violations of: the party presentation rule, the Constitutional Separation of Powers, and a legitimate "appointed" amicus' role of writing about the record to aid the Court in understanding the law used below. The recent scheduling order facially appoints the amicus as a substitute for the United States – overlooking that a Government brief should be scheduled as is usual. The appointed amicus is appointed without any limits and may thus present any arguments to "defend" the lower judge's Order and Opinion, regardless of the record. While the United States may have provided its intent so the Court could plan to receive any required understanding about what occurred below, the United States and Court's Orders now seem to encourage DOJ abdication as a party to the case. The brief schedule bypasses the Appellee brief by an unprecedented replacement of the DOJ in its Executive Branch role without any supporting federal or local rule to support this new "process."

## II.   <u>LEGAL STANDARDS</u>

No federal rule or law exists that requires the United States to agree with or defend a lower court decision on appeal to this Circuit Court.  The Government's brief typically presents its position on the issues whether it has prevailed or not at the district court.

No law or rule precludes the United States or any Appellee from agreeing in its brief with the Appellant.

No law or rule allows private amicus curiae to become a party in the appeal or to substitute for the United States as a party.

Fed. R. App. P. 29 makes no mention of a court appointing amicus curiae who are not requested by or in support of a party to the appeal.

No Circuit Rule addresses when or why the Court may appoint an amicus curiae who is not supporting a party position upon request.  Circuit Rule 29 only addresses briefing requirements for amicus "not appointed by the Court" without explanation of why appointment outside party support could occur. It refers all other amicus to Rule 28 for briefs.  Federal Rule 29 Brief of an Amicus Curiae states:

> (a)(2) When Permitted. The United States or its officer or agency or a state may file an amicus brief without the consent of the parties or leave of court. Any other amicus curiae may file a brief only by leave of court or if the brief states that all parties have consented to its filing, but a court of appeals may prohibit the filing of or may strike an amicus brief that would result in a judge's disqualification.

Fed. R. App. P. 29(a). Brief of an Amicus Curiae During Initial Consideration of a Case on the Merits.

Only passing mention of a court-appointed amicus, without guidance or substance for when this could occur, is in this Court's Handbook:

> A brief of an amicus curiae may be filed only by consent of all the parties or by leave of the Court, unless the amicus is the United States or an officer or agency thereof, a state, a territory, a commonwealth, or the District of Columbia, <u>or has been appointed by the Court</u>. A motion for leave to file an amicus brief must set forth the movant's interest, the reason why briefing is desirable, and why the matters asserted are relevant.

D.C. Circuit Handbook of Practice and Internal Procedures, Section IX. A. 4. Amici Curiae and Intervenors, Aug 2025 at 38-39. (Emphasis added).

As succinctly summarized without contradiction by any rule, law, or U.S. court, "[a]mici are not parties to the case…." *Sciotto ex rel. Sciotto v. Marple Newtown Sch. Dist*., 70 F. Supp. 2d 553, 554 (E.D. Pa. 1999) (Emphasis added).

And there is danger in a court over-relying on amicus while sidelining party views:

> For the reasons stated, we vacate the Ninth Circuit's judgment and remand the case for reconsideration shorn of the overbreadth inquiry interjected by the appellate panel and bearing a fair resemblance to the case shaped by the parties.

*United States v. Sineneng-Smith*, 590 U.S. 371, 380 (2020).

The Constitution vests prosecutorial power solely in the Executive Branch. See U.S. Const. art. II, §§ 1, 3. The "Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974) (citations omitted). An exception to that exclusive

authority exists for the prosecution of criminal contempt of court at the trial level. The Government must first refuse to prosecute. See Fed. R. Crim. P. 42(a)(2). The present case does not involve the issue of "contempt" or Government failure to prosecute. Nor has this Court mentioned a special prosecutor. But it has not required the amicus curiae to be neutral in aid of the Court. The private amicus here may advocate for or against any external interests as it sees fit, such as arguing against anything Ordered by President Trump or not.

The Government doesn't abdicate its prosecutorial function when it agrees with a defendant on a legal question. The Government has an independent obligation to assess the merits of any legal argument, such as occurs when the Solicitor General declares error at the U.S. Supreme Court and abandons a prior position. See U.S. Supreme Court Rules and Stephen M. Shapiro et al., Supreme Court Practice § 5.12(a), at 345-46 (10th ed. 2013). The Supreme Court has a written rule for appointing amicus when both parties agree. This Court has no such rule.

## III.  <u>**ARGUMENT**</u>

A revised scheduling Order is required so there is no inference that Mr. Wilson represents both himself and the Government, or that the Government has abandoned its prior position, or that amicus has been illegitimately substituted as a party opponent – with no requirement to use of only the record to clarify law for this Court. If the United States chooses to not file a brief, that is its prerogative, as distasteful to

justice and its duty as that might seem. But it must be included in the briefing schedule where its brief can be due on the same day or 7 days after Mr. Wilson given that it is not defending the lower court decision. The amicus brief, if the Court still believes it is needed, should be in accordance with the Rules, and be scheduled to be due 7 days after Mr. Wilson's brief. See USCS Fed Rules App Proc R 29.

### A. The Legal Terms of Art for "Case or Controversy" and "Adversarial" Do Not Require an Opposition Brief to a Lower Court's Opinion

Some circuit courts have appointed amicus curiae under a court-created legal fiction that if the Government does not agree with the lower court and agrees with the Appellant then a private attorney must be appointed to defend the judge's written opinion even when the caselaw used was clearly cited. Circuit courts have equated "adversarial" with an "opposition" requirement when that is not how "adversarial" is strictly defined in caselaw about a controversy.

### 1. A Case or Controversy Depends on Mr. Wilson's Standing and Stakes as Appellant Here.

Under Article III, § 2 of the U.S. Constitution, the federal courts have jurisdiction over a dispute only if it is a "case" or "controversy." Here, Mr. Wilson had a district court criminal case where the U.S. was a party – checking a box for a "case." Although this is not docketed as a civil matter because the Section 2255 was placed in the existing criminal docket, he meets a key component for a case: standing. Mr. Wilson has standing due to having injury in fact (imprisonment),

causation (failure to apply the pardon), and redressability (this Court can free him). See *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560 (1992). "And the movant 'must answer a basic question — What's it to you?" *FDA* v. *Alliance for Hippocratic Medicine*, 602 U. S. 367, 379, 144 S. Ct. 1540, 219 L. Ed. 2d 121 (2024) (quoting A. Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)). The party must have a personal stake in the matter. See *Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2133 (2025).

Here we have the controversy "does the pardon apply?" Both the United States and Appellant assert it does, but it was the lower court that created an interpretation that caused controversy rather than accepting the DOJ as speaking for the sitting U.S. President who issued the Pardon.

## 2. The Requirement for a *Case or Controversy* Does not Include Proving Party Opposition on Appeal.

The "*v*" in the case styling originated from party opposition in the criminal case. The Government prosecuted at the trial court. For the specific pardon issues being raised under the § 2255 for appeal, both parties disagree with the lower court. "Adversarial" could then be viewed as more about the issue(s) for this Court where resolution at the lower court was "averse" to both parties. There is a case as well as a controversy that keeps the appeal from being moot or dismissed as non-justiciable.

Nothing prevents the U.S. as Appellee from having a similar or separate stake in the outcome when the district judge ruled against both parties. Mr. Wilson has his liberty at stake. The DOJ has its role at stake: the U.S. Attorney General as executor of the Pardon Proclamation 10887 – where AUSAs spoke for the sitting President.

> [T]he party bringing suit must show that the action injures him in a concrete and personal way. This requirement is not just an empty formality. It preserves the vitality of the adversarial process by assuring both that the parties before the court have an actual, as opposed to professed, stake in the outcome, and that the legal questions presented . . . will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.

*Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) ((citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 581, (1992)).

The parties each have a controversy over the lower court's decision, with the stakes being different for each even though the DOJ also advocated for Mr. Wilson's liberty. The adversarial position here is that *both parties are averse to* and facing injury because the lower court judge assumed a role of interpreting the Presidential Pardon in contradiction to those speaking for the sitting U.S. President. While the judge is not a party, her actions and decision are the root of the case, controversy, and adversarial nature here.

Because the U.S. Constitution does not require party adversity (meaning in direct opposition to each other) for a case and controversy, and caselaw or rules can allow parties in agreement on appeal to have a shared controversy even with different

stakes in the outcome, this case can be decided based on the parties' briefs and record.  In a civil case, which the § 2255 can be, agreement would normally lead to settlement out of court. Here, it was the court who refused the "settlement."

The appeal requires no external amicus to become a proxy speaker as if it is an opposition party representing the lower court judge. This Court appointed an amicus when neither party supported the district court decision, but since 1976 has not enacted a governing rule for using amicus to present an adversarial position as referred to in *Haldeman*:

> [T]his court may appoint an attorney as *amicus curiae* to defend that decision. The whole purpose in doing so is to give the court the benefit of the District Judge's wisdom on the point at issue. In no sense is the judge placed in the position of a litigant . . . .

*United States v. Haldeman*, 181 U.S. App. D.C. 254; 559 F.2d 31, 138-139 (D.C. Cir. 1976).

Providing wisdom and enlightenment does not equal creating new arguments. If the new standard is that this Court cannot decide a case when the parties both oppose the lower court ruling, then that is outside the U.S. Constitution's requirements. In this, without a specific requirement for caselaw explanation by the amicus, the amicus is being inserted on a legal fiction for adversarial party opposition.

The Court should only appoint an amicus if there is caselaw or something from the lower court that requires clarification. An external private attorney cannot

argue as proxy for a judge. Any appointment should be only if the Court requires explanation of the arguments made <u>on the record</u> by Judge Friedrich. The brief schedule where "[t]he court has concluded that it is in the court's interest to appoint amicus," if maintained, should specify and limit what the amicus should provide based on the record's holdings. Document #2123693

### B. <u>The Party Presentation Rule and Separation of Powers Mean the Amicus Curiae Cannot be a Substitute Proxy for the DOJ</u>

#### 1. The Party Presentation Rule Requires the Parties to Define and Argue the Issues.

> In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.

*Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ((See *Castro* v. *United States*, 540 U.S. 375, 381-383, 124 S. Ct. 786, 157 L. Ed. 2d 778 (2003)); ((See also *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020)).

The rule can be clearly stated as: "the principle that courts normally decide only questions presented by the parties" *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579, 206 L. Ed. 2d 866 (2020)

Even if there is an amicus, the party counsels' presentations are those that should be most heavily relied upon since they are the ones seeking relief. "[T]he parties know what is best for them." See *Castro* 540 U.S. 375 at 386 (Scalia, J.,

concurring in part and concurring in judgment). Any other role, including the court's "is a modest one" for shaping arguments. *United States v. Graham*, 51 F.4th 67, 80-81 (2d Cir. 2022) ((quoting *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579, 206 L. Ed. 2d 866 (2020)). And as held, "In opinions related to amicus this Court relied on party presentations: *Narragansett Indian Tribe v. Nat'l Indian Gaming Comm'n*, 332 U.S. App. D.C. 429, 158 F.3d 1335, 1338 (D.C. Cir. 1998) ("Because we ordinarily do not entertain arguments not raised by parties …")." Arguments should normally only arise from the parties, where amicus should not be bringing new arguments. See *Eldred v. Ashcroft*, 347 U.S. App. D.C. 121 (2001).

> 'amicus curiae' is '[s]omeone who is not a party to a lawsuit but who petitions the court or is requested by the court to file a brief in the action because that person has a strong interest in the subject matter.' Amicus Curiae, Black's Law Dictionary (10th ed. 2014). . . . 'The distinction is important because, by its nature, counsel appointed as amicus would be limited to defending the judgment and could not claim any of the powers associated with a special prosecutor.'

*United States v. Arpaio*, 906 F.3d 800, 809 (9th Cir. 2018).

It is important to point out that in the letter from Ms. Pirro that suggested an amicus here, there was no mention of the United States' refusal to provide its Appellee brief. Yet that brief was eliminated from the most recent schedule. Further, for the cases she referenced as analogous where amicus was appointed, they were not similar: in each of those cases the Government provided an appellee

brief.[1] The Court appears to have made those decisions after briefs and for more reasons than just having opposition.

There is no reason for the United States to not provide its Appellee brief. Aside from there being a staff employed to do just that, Mr. Wilson cannot be expected to provide the only party brief that represents President Trump's Constitutional authority and the U.S. Attorney General as being the executor of the pardon who issued the guidance to the U.S. Attorney's office for D.C and nationally. That Attorney General level guidance where there is no evidence it did not come from the President has been referenced in other similar cases related to January 6th search contraband, no matter how woefully inadequate that was presented in Ms. Pirro's letter.

In refusing to admit the AUSA and D.C. U.S. Attorney Office (USAO) made a mistake in early February 2025, and that guidance came from above the U.S. Attorney, Ms. Pirro continues to compound the problem in having written, "The Government did not oppose Wilson's § 2255 motion because, in its view, the Presidential pardon covers a broad range of conduct related to the events of January 6." Based on other cases and writings by U.S. Attorneys outside the D.C., the

---

[1] The letter referred to: *United States v. Fokker Servs. B.V.*, 422 U.S. App. D.C. 65, 72 (2016); *United States v. Ammidown*, 162 U.S. App. D.C. 28 (1973) Nos. 72-1694, 72-1695; *United States v. Thorpe*, No. 23-3027.

"Government" was in fact referencing the Attorney General's office or the President and was NOT the D.C. USAO. What can incorrectly be inferred by her words is that Mr. Pirro's office interpreted the Pardon.

If the D.C. USAO doesn't agree with the Pardon, then it should write that it is abandoning prior support for President Trump. That seems unlikely so her office should file a brief. "Counsel almost always know a great deal more about their cases than we do, and this must be particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before us." *Greenlaw*, 554 U.S. at 244 (2008) (citing to *United States* v. *Samuels*, 808 F.2d 1298, 1301 (8ᵗʰ Cir. 1987) (R. Arnold, J., concurring in denial of reh'g en banc).

Inherent authority might be stated as what the Court can use to appoint amicus. However, references to inherent authority to appoint amicus have referred to cases where the Government abandoned the position it took at the lower court. That isn't the case here at present. While the U.S. Supreme Court has a published rule for this situation, this Court doesn't. *Arpaio*, 887 F.3d 979, 982 (9th Cir. 2018) included:

> The long-standing practice of the United States Supreme Court is to use its inherent authority to appoint disinterested counsel to represent the position taken by the United States below when the United States refuses to defend its prior position. *See United States v. Brainer*, 691 F.2d 691, 693 (4th Cir. 1982) ("When the Government confesses error in the Supreme Court, and thus abandons a position taken in a lower court, the Court commonly appoints an amicus to assert the abandoned cause.") (citing cases) . . .

## 2. Separation of Powers Prohibits the Court from Substituting a Private Attorney in the DOJ's Constitutional Role

The amicus may not step in the role of the Government to be a party opponent in this appeal without violating the Separation of Powers. The most recent brief scheduling order gives that role assumption appearance. While the Court has not asked for a private special prosecutor to stand-in for the DOJ, it appears the Court is giving the amicus Executive Branch party status by having eliminated the DOJ's Appellee brief from the schedule.

The Government's decision not to defend the district court's ruling represents a fundamental exercise of prosecutorial discretion. This discretion is "absolute" and rooted in the separation of powers. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *United States v. Nixon*, 418 U.S. 683, 693 (1974). Courts cannot compel the Executive Branch to prosecute or defend positions it chooses not to pursue. *United States v. Fokker Services B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (noting courts must respect prosecutorial discretion even when disagreeing with Government's position). The court can ask for amicus to bring understanding to the law used by Judge Friedrich although it has never published any such rule, and without amicus denied Mr. Wilson's request for release pending appeal. But the amicus cannot be given status as a party opponent and allowed to roam freely over laws to bolster anything written by the lower court.

It is also not unreasonable to say that any proceeding with an appointed private attorney defending the district court's position will constitute an impermissible advisory opinion, which the lower court (or a proxy) is not authorized to issue. The Separation of Powers and the Constitution's requirement for a case or controversy precludes the U.S. courts from issuing advisory opinions. Chief Justice John Jay is credited with establishing this clear direction. In a 1793 letter to George Washington, he wrote that courts will not be involved with giving opinions on legal questions. That appears to be what the amicus could attempt, rather than just being limited to explaining the case law, if needed, that was used by Judge Friedrich.

Because of the party presentation rule, and the Separation of Powers, if this Court maintains a requirement for an amicus, then it should limit the amicus' role to clarifying caselaw on the record in the lower court Opinion and Order. Any amicus oral argument should be minimal in time, if allowed at all. In no event can amicus take the place of the United States or even assume a party role for Judge Friedrich in this appeal.

## IV.    <u>CONCLUSION</u>

Because nothing requires the Government Appellee to be adversarial to Mr. Wilson on appeal in an Appellee brief; and despite the AUSA recently corresponding in seeming abdication that DOJ *is not* the Appellee, the scheduling Order should be reissued. The new Order should specify an Appellee brief due date on or by 7 days

after Mr. Wilson's brief, and that appointment of the amicus is to provide *neutral aid* and "wisdom" to the Court by defending the legal basis as contained in the lower court's record for Judge Friedrich's decision – without creating an unconstitutional party opponent as a substitute for the Executive Branch's DOJ Appellee, or allowing unlimited argument outside the record by amicus. Further, the United States must remain the recognized party where it might be expected at a minimum to state that the pardon applies and it has not abandoned its prior position from below where it supported Mr. Wilson. The Order shouldn't allow excess time for an amicus brief delivery or oral argument since it is not a party, or party opponent, to Mr. Wilson. Amicus should have a brief delivery date no more than seven days after Mr. Wilson's and the Government's brief – as specified by Court Rule 28 and the Handbook.

WHEREFORE, Mr. Wilson respectfully asks this Court to grant him the relief of a revised brief scheduling Order with his brief due on October 20, 2025, as currently scheduled; with the Appellee brief due on either October 20th or 27th; with an amicus brief, if still required, due on October 27th; and with limitation for the amicus to explain the caselaw used on the record in the Opinion and Order denying that the Pardon applies to Mr. Wilson.

September 9, 2025                    Respectfully submitted,

/s/ Carolyn Stewart

Carolyn Stewart, Esq.
Bar No: FL 0098
Appellant Dan Wilson's Attorney
Stewart Country Law PA
Plant City, FL 33567
T: 813-659-5178
E: carolstewart_esq@protonmail.com

/s/ George T. Pallas

George T. Pallas, Esq.
GEORGE T. PALLAS, P.A
Counsel for Dan Edwin Wilson
Bar No:  FL0108
2420 SW 22nd Street
Miami, FL 33145
305-856-8580
305-860-4828 FAX
george@pallaslaw.com

# CERTIFICATE OF COMPLIANCE

1. I hereby certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) of the Federal Rules of Appellate Procedure. As measured by the undersigned's word-processing system used to prepare this motion, the motion contains 4,767 words.

2. This document complies with the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a 14 point proportionally spaced roman style typeface (Times New Roman).

September 9, 2025                              Respectfully submitted,

                                              /s/ Carolyn Stewart
                                              Carolyn Stewart
                                              Appellant's Counsel


# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing.


September 9, 2025                              Respectfully submitted,

                                              /s/ Carolyn Stewart
                                              Carolyn Stewart
                                              Appellant's Counsel