ORAL ARGUMENT NOT YET SCHEDULED

BRIEF FOR THE UNITED STATES
————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
————————————

No. 25-3041
————————————

UNITED STATES OF AMERICA,                    Appellee,

v.

DAN EDWIN WILSON,                            Appellant.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
————————————

JEANINE FERRIS PIRRO
United States Attorney

CHRISELLEN R. KOLB
\* DANIEL J. LENERZ
DC Bar #888283905
Assistant United States Attorneys
\* Counsel for Oral Argument
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Daniel.Lenerz@usdoj.gov
(202) 252-6829

Cr. No. 23-427 (DLF)

## Certificate of Parties, Rulings, and Related Cases

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

### Parties and Amici

The parties to this appeal are appellant Dan Edwin Wilson and appellee the United States of America. On July 3, 2025, this Court appointed Alexander Cave as amicus curiae to present arguments in support of the district court's March 13, 2025, memorandum opinion and order denying Wilson's 28 U.S.C. § 2255 motion.

### Rulings Under Review

This is an appeal from an order by the Honorable Dabney L. Friedrich denying Wilson's § 2255 motion.

### Related Cases

Appellee is unaware of any related cases.

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the attached Addendum.

# TABLE OF CONTENTS

STATEMENT OF THE CASE ..................................................... 1

   Procedural History ............................................................ 1

   The District Court's Order Denying Wilson's § 2255 Motion ............ 6

   This Court's Order Denying Wilson's Motion for Release
      Pending Appeal ......................................................... 10

SUMMARY OF ARGUMENT ..................................................... 13

ARGUMENT ................................................................... 13

   The District Court Erred When it Concluded that Wilson's
   Firearms Offenses were not Covered by the President's
   Pardon. .................................................................. 13

CONCLUSION ................................................................ 20

# TABLE OF AUTHORITIES*

## Cases

*Andrews v. Warden*, 958 F.3d 1072 (11th Cir. 2020)........................ 12, 16

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) ........... 17

*Dubin v. United States*, 599 U.S. 110 (2023) .......................................... 14

*Friedman v. Sebelius*, 686 F.3d 813 (D.C. Cir. 2012) ............................... 7

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990) ......................... 14

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018) ............. 14

*Rosemond v. Hudgins*, 92 F.4th 518 (4th Cir. 2024) ............................... 16

*The Buena Ventura*, 175 U.S. 384 (1899)................................................. 14

*United States v. Wilson*, 2025 WL 1009047
    (D.D.C. Mar. 13, 2025)............................................... 4, 6, 7, 8, 9, 16, 17

*United States v. Wilson*, 2025 WL 999985
    (D.C. Cir. Apr. 2, 2025) ......................................................... 10, 11, 12

*United States v. Wilson*, 32 U.S. 150 (1833) .......................................... 16

---

\* Authorities upon which we chiefly rely are marked with asterisks.

## Other Authorities

18 U.S.C. § 372 ......................................................................2

18 U.S.C. § 922(g)(1) ...........................................................2

18 U.S.C. § 924(a)(2) ...........................................................2

26 U.S.C. § 5841 ...................................................................2

26 U.S.C. § 5861(d) ..............................................................2

26 U.S.C. § 5871 ...................................................................2

28 U.S.C. § 2255 ...................................................................5

90 Fed. Reg. 8331 (Jan. 29, 2025) ........................ 3, 8, 10, 12, 14, 15, 19

Fed. Crim. R. P. 20(a) ..........................................................2

# ISSUE PRESENTED

Whether the district court erred when it concluded that Wilson's offenses were not covered by President Trump's pardon of "individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021."

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

No. 25-3041

———————————————

UNITED STATES OF AMERICA,              Appellee,

v.

DAN EDWIN WILSON,              Appellant.

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————

BRIEF FOR THE UNITED STATES

———————————————

## STATEMENT OF THE CASE

### Procedural History

In June 2022, while investigating appellant Dan Wilson's involvement in the January 6, 2021, attack on the United States Capitol, law enforcement agents executed a search warrant at Wilson's home in the Western District of Kentucky (see Document (Doc.) 1-1 (Statement of Facts in support of Criminal Complaint) at 5-6; Doc. 59 (Statement of

Offense) at 9-10).[1] Among other things, the agents found six firearms, which Wilson was prohibited from possessing as a result of his previous felony convictions (Doc. 1-1 at 5-6; Doc. 59 at 9-10).

Wilson later entered a plea agreement in which he agreed to plead guilty to conspiracy to impede or injure an officer, in violation of 18 U.S.C. § 372; possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2); and possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), & 5871 (Doc. 56 (plea agreement) at 1). The first charge arose from Wilson's conduct leading up to and during the events of January 6, 2021 (Doc. 59 at 1-9). The latter two charges arose from the firearms found in Wilson's home (*id.* at 9-10). As part of his plea agreement, Wilson agreed to have those charges transferred from the Western District of Kentucky to the District of Columbia under Federal Rule of Criminal Procedure 20(a) (*id.*).

Wilson pleaded guilty on May 17, 2024 (5/17/24 Transcript (Tr.) 35-36). On August 28, 2024, the Honorable Dabney L. Friedrich sentenced Wilson to concurrent terms of 60 months in prison on each count, to be

---

[1] "Doc. __" refers to the district court docket number for Case No. 23-cr-427 (D.D.C.).

followed by three years of supervised release (8/28/24 Tr. 63-64). Wilson did not appeal.

On January 20, 2025, President Trump issued a presidential proclamation granting "a full, complete and unconditional pardon to . . . individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025). The proclamation excluded fourteen people from the pardon's scope—Wilson was not one of them. *Id.* The pardon's purpose, the President said, was to end a "grave national injustice" and begin a "process of national reconciliation." *Id.* To ensure the full and expeditious implementation of the proclamation, the President delegated to the Attorney General the responsibility to "administer and effectuate the immediate issuance of certificates of pardon to all individuals described [in the pardon]." *Id.* Wilson received a certificate of pardon from the Department of Justice informing him that he had been "pardoned by the Presidential Proclamation of January 20, 2025," and stating that the pardon covered his "convictions for offenses related to events that occurred at or near the United States Capitol on January 6, 2021" (Doc. 110, Exhibit A).

Shortly after the President issued his proclamation, Wilson was released from custody by the Bureau of Prisons. *United States v. Wilson*, 2025 WL 1009047, at *1 (D.D.C. Mar. 13, 2025). The Bureau of Prisons subsequently sought to have Wilson return to custody, prompting Wilson to move for a stay of any order requiring his reincarceration (Doc. 100). The district court granted a stay and ordered the government to "file a brief, with supporting legal authority, that sets forth its position as to why the Court should not order the defendant to self-report to the Federal Bureau of Prisons to serve the remainder of his sentence on the firearms offenses, which are unrelated to the defendant's criminal conduct on January 6, 2021" (2/3/25 Minute Order).

On February 6, 2025, the government filed a short pleading setting forth its understanding that, because Wilson's firearms offenses "did not occur at the United States Capitol on January 6, 2021," they were not covered by the President's pardon (Doc. 103 at 2). The next day, the district court entered a minute order finding "that the plain language of the President's January 20, 2025 pardon does not extend to the defendant's Western District of Kentucky firearm convictions," and ordering Wilson to "self-surrender to the Bureau of Prisons, as directed

by the United States Probation Office, to serve the remainder of the five-year (60 month) concurrent sentence the Court imposed for his Western District of Kentucky firearm convictions" (2/7/25 Minute Order).

The Bureau of Prisons ordered Wilson to self-surrender on February 27, 2025 (Doc. 106 at 1). On February 24, after the district court denied his motion to extend his self-surrender date, Wilson moved for relief under 28 U.S.C. § 2255, arguing that the President's pardon covers his firearms offenses (Doc. 107 (§ 2255 motion) at 2-4). The district court ordered the government to respond to Wilson's motion the next day (2/24/25 Minute Order). In that pleading, the government explained that, after its February 6 filing, it had "received further clarity on the intent of the Presidential Pardon," which did, in fact, "include[ ] a pardon for the firearm convictions to which the defendant pled, similar to other defendants in which the government has made comparable motions" (Doc. 108 at 2). The government subsequently explained that "it is the Executive Branch's position that the pardon covers the defendant's conviction[s] in this case," and urged that this "interpretation of the scope of President Trump's pardon should be accorded deference" (Doc. 111 at 1-2). The pardon covered offenses "'*related to events* that occurred at or

near the United States Capitol on January 6, 2021,'" and it was "a reasonable interpretation of this language to include cases such as the defendant's, where the firearms that formed the basis of his convictions were found as a result of a search warrant for evidence of the defendant's conduct on January 6, 2021 (and for which he was not previously being investigated)" (*id.* at 3 (quoting Proclamation 10887)).

The district court again stayed Wilson's self-surrender date "pending any future order of the Court" (2/26/25 Minute Order).

## The District Court's Order Denying Wilson's § 2255 Motion

On March 13, 2025, the district court entered an order denying Wilson's § 2255 motion. *See Wilson*, 2025 WL 1009047, at *9. In the accompanying opinion, the court determined that, for an offense to fall within the President's pardon, "it must be tethered to a specific time—January 6, 2021—and place—at or near the U.S. Capitol." *Id.* at *4. The court concluded that, "[b]ecause Wilson did not use the firearms he possessed in Kentucky when he conspired to impede and injure officers at the Capitol on January 6, 2021, his firearm convictions are not covered by the Presidential Pardon." *Id.*

The court rejected the government's position that Wilson's firearms offenses were "related to" events that occurred at or near the United States Capitol on January 6, 2021, because those offenses were discovered during the execution of search warrants obtained as part of the January 6 investigation. *Wilson*, 2025 WL 1009047, at *4. The court determined that, although "'related to' has a capacious meaning," that phrase "must be understood in context." *Id.* Because the pardon "only applies to 'certain' offenses—those 'related to events that occurred at or near the United States Capitol on January 6, 2021,'" the "related to" clause "restricts the scope of the generic term 'offenses' to those 'committed in certain factual circumstances.'" *Id.* (quoting *Friedman v. Sebelius*, 686 F.3d 813, 818-23 (D.C. Cir. 2012)). Here, "those factual circumstances are tethered to a specific place and time—the events that occurred at or near the U.S. Capitol on January 6, 2021." *Id.*

The court further found that "[t]he surrounding text of the pardon makes clear that 'related to' denotes a specific factual relationship between the conduct underlying a given offense and what took place at the U.S. Capitol on January 6, 2021." *Wilson*, 2025 WL 1009047, at *5. The pardon's title "strongly suggests that it is the offense itself that must

be related to the events of January 6," and the pardon's discussion of "'*conduct* related to the events at or near the United States Capitol on January 6, 2021,'" rather than "the *investigation* which produced the indictment," "indicates that the pardon is likewise meant to apply only to defendants convicted of January 6-related offenses—those occurring at or near the Capitol on January 6, 2021." *Id.* (quoting 90 Fed. Reg. at 8331) (emphasis in *Wilson*).

The court also determined that "[t]he structure of the Presidential Pardon lends further support to the conclusion that it was meant to apply to offenses factually tethered to the events of January 6, 2021, rather than to incidental offshoots of the January 6 investigations." *Wilson*, 2025 WL 1009047, at *5. In the pardon, "President Trump drew clear distinctions between certain classes of January 6 defendants," but "made no attempt to distinguish between those January 6 defendants who were charged with additional criminal offenses . . . as a result of the January 6 search warrants and those who were not." *Id.*

Separately, the district court declined to defer to the Executive Branch's interpretation of the pardon. *Wilson*, 2025 WL 1009047, at *5. It concluded that it "need not" do so "because the pardon's text is clear

and unambiguous." *Id.* "But even if the language of the pardon were ambiguous," the court explained, it "would not accord deference to the Department [of Justice]'s most recent interpretation because it is unreasonable and does not reflect its fair and considered judgment." *Id.*

According to the district court, the Executive's interpretation of the pardon was "unreasonable because it is unsupported by the pardon's text." *Wilson*, 2025 WL 1009047, at *5. "The pardon says nothing at all about evidence recovered during an investigation, much less evidence recovered 'as a result of search warrants.'" *Id.* Additionally, looking at pardon-related litigation in courts across the country, the court determined that "the Department's prosecution decisions defy its broad interpretation of the pardon's scope." *Id.* at *6. And, based on the Department of Justice's litigating positions in those cases, the court concluded that "the Department's current interpretation diverges sharply from its previous position, is being inconsistently applied, and appears to be a post hoc rationalization advanced to support its ongoing litigating positions." *Id.* The court thus gave "no deference" to the Executive Branch's interpretation of the pardon because it "lack[ed] a

reasoned basis and [wa]s not a fair and considered judgment of the pardon's scope[.]" *Id.* at *8.

In its order denying Wilson's § 2255 motion, the district court issued a certificate of appealability as to "whether the continued incarceration of the defendant would violate his Fifth Amendment due process rights in light of President Trump's January 20, 2025 pardon, Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025)" (Doc. 112).

## This Court's Order Denying Wilson's Motion for Release Pending Appeal

On March 28, 2025, Wilson timely appealed the district court's denial of his § 2255 motion (Doc. 114 (notice of appeal)). *See* Rules Governing Section 2255 Proceedings 11(b); Fed. R. App. P. 4(a). That same day, Wilson moved this Court to stay his self-surrender date pending appeal (Appellant's Unopposed Emergency Motion for Stay Pending Appeal Pursuant to FRAP 8(c)).

On April 2, 2025, a divided panel of this Court denied Wilson's motion. *See United States v. Wilson*, 2025 WL 999985 (D.C. Cir. Apr. 2, 2025). The panel majority concluded that, "[f]or the reasons given in the thorough opinion of the district court, Wilson has not established a

likelihood of success on the merits warranting release pending appeal." *Id.* at *2. The majority concluded that the pardon's language "plainly applies to related offenses – not, as here, to an offense that is only connected to January 6 by the happenstance that it was uncovered during investigation of the unrelated January 6 offenses." *Id.* Wilson's offenses were "not 'offenses related to events that occurred' at the Capitol on January 6." *Id.* Rather, "[t]hey occurred at a different time and place, and the elements of these offenses – possession of an unlicensed firearm and the possession of firearms by a prohibited person – bear no relationship to conduct that occurred at the Capitol on January 6. Thus, by the plain terms of the Pardon, they are not covered." *Id.*

Judge Rao dissented. She concluded that Wilson's appeal "raises a novel question implicating the scope of the pardon power," and that "[t]he circumstances of this pardon also raise novel questions about the extent of the Executive's power to administer and apply a blanket pardon to particular individuals." *Wilson*, 2025 WL 999985, at *2 (Rao, J., dissenting).

Here, "President Trump issued a blanket pardon but specifically tasked the Attorney General with 'administer[ing] and effectuat[ing]' the

pardon by issuing certificates of pardon to the relevant individuals." *Wilson*, 2025 WL 999985, at *3 (quoting 90 Fed. Reg. at 8331). As a result, the Attorney General was "delegated the authority to implement the President's pardon." *Id.* When exercising this authority and issuing individual certificates of pardon, "the Attorney General could list the specific offenses subject to the pardon. Such an official act of administering and effectuating the President's pardons would likely be unreviewable." *Id.*

Although Wilson's certificate of pardon "merely repeats the language of the blanket pardon and does not specifically list his firearm convictions," there is nothing that "seems to preclude a new certificate from being issued that clarifies the scope of Wilson's pardon." *Wilson*, 2025 WL 999985, at *3. And "[b]ecause it is unlikely that the issuance of a certificate of pardon is judicially reviewable, there is at least a 'substantial question' whether we should defer to the Department of Justice when it claims the certificate it has issued applies to Wilson's firearms convictions." *Id.* (citing *Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020)). Judge Rao thus determined that Wilson had made the requisite showing for release pending appeal. *Id.*

The pardon at issue in this case reaches any conviction or charged conduct that is "*related to* the events that occurred at or near the United States Capitol on January 6, 2021." That language is not limited solely to offenses that occurred at the U.S. Capitol on January 6, 2021. In the context of President Trump's intent that the pardon will end a "grave national injustice" and begin a "process of national reconciliation," the pardon's remedial purpose will not be achieved if people subjected to January 6-related investigations continue to be prosecuted for certain in-home offenses that would not have been discovered but for those investigations. Wilson's firearms offenses were just such offenses, and thus the Department of Justice reasonably concluded that the pardon covers them.

## ARGUMENT

### The District Court Erred When it Concluded that Wilson's Firearms Offenses were not Covered by the President's Pardon.

The President's proclamation provided, as relevant, that the pardon reaches any conviction or charged conduct that is "*related to* the events that occurred at or near the United States Capitol on January 6, 2021."

90 Fed. Reg. at 8331 (emphasis added). That language is plainly not limited solely to offenses that occurred at the U.S. Capitol on January 6, 2021. The words "relate[d] to" in their "normal sense" have a "broad common-sense meaning" that potentially reaches anything having "a connection with" the related-to events. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). So when construing "language including the phrase 'relat[ed] to,'" courts "typically read the relevant text expansively." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018). How expansively depends on the "context." *Dubin v. United States*, 599 U.S. 110, 119 (2023) ("That the phrase ['relate to'] refers to a relationship or nexus of some kind is clear. Yet the kind of relationship required, its nature and strength, will be informed by context." (internal citation omitted)).

The relevant context—as provided in the proclamation itself—is President Trump's intent that the pardon will end a "grave national injustice" and begin a "process of national reconciliation." 90 Fed. Reg. at 8331; *see also The Buena Ventura*, 175 U.S. 384, 394 (1899) (declining to give a cramped construction to a presidential proclamation on the ground that the President "never intended it"). The proclamation's remedial

14

purpose will not be achieved if people subjected to January 6-related investigations continue to be prosecuted for certain in-home offenses that would not have been discovered but for those investigations. Whether an offense falls within the scope of this remedial purpose—and thus is "related to" the events at the Capitol on January 6—involves a fact-intensive and case-specific inquiry.

Here, the Department has determined that there is no sound reason to believe that Wilson's possession of firearms at his home, while being a prohibited person, would have been discovered in any way other than as the unexpected byproduct of executing a search warrant seeking evidence related to Wilson's conduct at the U.S. Capitol on January 6. For example, there was no victim or witness who feasibly would have reported this offense to the authorities, nor any investigation unrelated to the events of January 6, 2021, that might have otherwise uncovered it. In sum, the Department has concluded that were it not for Wilson's involvement in "the events that occurred at or near the United States Capitol on January 6, 2021," 90 Fed. Reg. at 8331, his firearms offenses would not have come to light, let alone been prosecuted. His convictions

are sufficiently "related to" those events to fall within the pardon's scope as described in the presidential proclamation's text.

In reviewing the Department's reading of the President's pardon, "deference should be accorded to an executive agency's interpretation of an executive order it is charged with administering," including in the context of a pardon. *Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020). As the Eleventh Circuit has observed, "deference to an agency's interpretation is sensible in this context, where a court cannot even review a pardon that a recipient has not presented to it." *Id.* (citing *United States v. Wilson*, 32 U.S. 150, 161-63 (1833)). And as the Fourth Circuit has recognized, the Judicial Branch's role with respect to pardons is quite limited. *See Rosemond v. Hudgins*, 92 F.4th 518, 525-26 (4th Cir. 2024). Because the Department's position on the pardon is reasonable, it warrants deference. *Andrews*, 958 F.3d at 1078.

The district court concluded that the Department's reading of the pardon has been "inconsistent[ ]" in other cases and thus "appears to be a post hoc rationalization advanced to support its ongoing litigating positions." *Wilson*, 2025 WL 1009047, at *6. But any inadvertent deviations from the Department's consistent reading of the pardon has

been rectified. In any event, a mere change in litigation position is not proof that the Department failed to give "a 'fair and considered judgment on the matter in question.'" *Id.* (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 153 (2012)).

With respect to the Department's consistency in how it has read the pardon, consider one of the examples cited by the district court, *United States v. Kelley*, No. 3:22-cr-00118-TAV-JEM (E.D. Tenn. Feb. 18, 2025). *See Wilson*, 2025 WL 1009047, at *7. There, the United States explained that the defendant's convictions for conspiring to murder federal employees, soliciting a crime of violence, and influencing a federal officer by threat did not fall within the pardon's scope because they were "entirely independent" of, and thus "unrelated" to, the events at the U.S. Capitol on January 6, 2021. *See* ECF No. 95 at 1-3, *United States v. Kelley*, No. 3:22-cr-00118-TAV-JEM. That position was consistent with the Department's position in this case because, by threatening federal officers and soliciting others to murder them, the defendant committed offenses with an effect outside the home that were discovered through means unrelated to any investigation into his actions on January 6. *See* ECF No. 3, Affidavit in Support of Criminal Complaint and Arrest

Warrants at 4, ¶ 11, *United States v. Kelley*, No. 3:22-cr-00118-TAV-JEM (E.D. Tenn. Dec. 16, 2022). The United States has never maintained that the pardon's "related to" language is so expansive as to reach such offenses.

The same analysis applies to the United States's decision in *United States v. Taranto*, No. 1:23-cr-00229-CJN (D.D.C. Jan. 25, 2025), not to dismiss the defendant's June 2023 offenses. There, the record indicates that the defendant broadcast some of his June 2023 offenses live over a public YouTube channel and that law enforcement discovered his other offenses when he was apprehended after a confrontation with U.S. Secret Service agents. *See* ECF No. 8, Government's Memorandum in Support of Pre-Trial Detention at 1-3, *United States v. Taranto*, 1:23-cr-00229-CJN (D.D.C. July 5, 2023). These simply are not cases where the offenses are so connected to the events of January 6 that the United States can confidently say that they would not have been discovered and prosecuted but for the investigation into the defendant's conduct at the U.S. Capitol on January 6, 2021.

The district court also improperly criticized the government for "abruptly revers[ing] its position in this case[.]" *Wilson*, 2025 WL

1009047, at *6. Here, the government's initial position was unfortunately erroneous—it asserted that, because Wilson's firearms offenses "did not occur at the United States Capitol on January 6, 2021," they were not covered by the President's pardon (Doc. 103 at 2). But even the district court did not think that position was correct: an offense need not have occurred "*at*" the Capitol on January 6 to be "*related to* the events that occurred at or near the United States Capitol on January 6, 2021." 90 Fed. Reg. at 8331 (emphasis added). The government thus promptly corrected its reading of the pardon because it had overlooked that the pardon also applies to convictions and charged conduct "related to" the "events" at that time and place. Indeed, when the government corrected its position, the prosecutor explained that she had "received further clarity" on the pardon's scope in part by learning of cases where prosecutors had taken the position ultimately rejected by the district court (see Doc. 108 at 2-3). A similar correction has occurred in at least one other case. *See* United States' Supplemental Statement of Non-Opposition to Appeal Pursuant to Rule 9(b), *United States v. Martin*, No. 24-7203 (9th Cir. Feb. 27, 2025). These corrections are not "a post hoc

rationalization," but are instead a change in considered judgment based on the pardon's language and purpose.

## CONCLUSION

WHEREFORE, the government respectfully submits that the District Court's order denying Wilson's § 2255 motion should be reversed.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

CHRISELLEN R. KOLB
Assistant United States Attorneys

_____/s/_____
DANIEL J. LENERZ
DC Bar #888283905
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Daniel.Lenerz@usdoj.gov
(202) 252-6829

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this brief contains 3,768 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
_____
DANIEL J. LENERZ
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Carolyn Stewart, Esq., Stewart Country Law PA, Plant City, FL 33567, and upon court-appointed amicus curiae, Alexander J. Cave, Covington & Burling LLP, One CityCenter, 850 Tenth Street NW, Washington, DC 20001, on this 20th day of October, 2025

/s/
_____
DANIEL J. LENERZ
Assistant United States Attorney

# A D D E N D U M

# ADDENDUM

# INDEX

90 Fed. Reg. 8331 (Jan. 29, 2025) .................................................... Add-1

Pres. Proc. No. 10887, 90 FR 8331, 2025 WL 315838(Pres.)
Proclamation 10887

Granting Pardons and Commutation of Sentences for Certain Offenses
Relating to the Events at or Near the United States Capitol on January 6, 2021

January 20, 2025

**\*8331  By the President of the United States of America**

**A Proclamation**
This proclamation ends a grave national injustice that has been perpetrated upon the American people over the last four years and begins a process of national reconciliation.

Acting pursuant to the grant of authority in Article II, Section 2, of the Constitution of the United States, I do hereby:

(a) commute the sentences of the following individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, to time served as of January 20, 2025:

- Stewart Rhodes

- Kelly Meggs

- Kenneth Harrelson

- Thomas Caldwell

- Jessica Watkins

- Roberto Minuta

- Edward Vallejo

- David Moerschel

- Joseph Hackett

- Ethan Nordean

- Joseph Biggs

- Zachary Rehl

- Dominic Pezzola

• Jeremy Bertino

> (b) grant a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021;

The Attorney General shall administer and effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above, and shall ensure that all individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, who are currently held in prison are released immediately. The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive.

I further direct the Attorney General to pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021. The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive. **\*8332**

IN WITNESS WHEREOF, I have hereunto set my hand this twentieth day of January, in the year of our Lord two thousand twenty-five, and of the Independence of the United States of America the two hundred and forty-ninth.

Billing code 3395-F4-P

Pres. Proc. No. 1088790 FR 83312025 WL 315838(Pres.)

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---