# United States Court of Appeals
# for the District of Columbia Circuit

### No. 25-3041

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAN EDWIN WILSON, also known as Daniel Edwin Wilson,

*Defendant-Appellant.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:23-cr-00427-DLF-1, Honorable Dabney L. Friedrich, U.S. District Judge*

## OPENING BRIEF OF APPELLANT

\* George T. Pallas
GEORGE T. PALLAS, P.A.
2420 Coral Way
Miami, Florida
(305) 856-8580
george@pallaslaw.com

Carolyn A. Stewart
STEWART COUNTRY LAW PA
1204 Swilley Road
Plant City, Florida 33567
(813) 659-5178
carolstewart_esq@protonmail.com

*Counsel for Defendant-Appellant*

NOVEMBER 5, 2025

CP COUNSEL PRESS    (800) 4-APPEAL • [387186]

# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

## A. Parties and Amici.

The parties are Dan Wilson, Appellant and the United States of America ("government") as Appellee.

This Court appointed Alexander Cave as amicus curiae to present arguments in support of the district court's March 13, 2025, memorandum opinion and order denying Mr. Wilson's 28 U.S.C. § 2255 motion to apply the President's Executive Order 10887 pardon and not order him returned to prison.

## B. Rulings Under Review.

This is an appeal of a January 6 related offense where law enforcement in investigating a January 6 offense, seized firearms during the January 6 authorized search warrant in the Mr. Wilson's home district, in this case, the Western District of Kentucky. The Kentucky indictment was transferred to the District of Columbia to be resolved by the District Court judge along with the January 6 charges. Mr. Wilson was pardoned on January 20, 2025, and released from custody but received a phone call to return to prison. The district court judge ruled that the pardon did not apply in deciding on Mr. Wilson's request for a stay and then ruled that the pardon did not apply given his 18 U.S. Code § 2255 motion.

## C. Related Cases.

Mr. Wilson is unaware of any related cases.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

A. Parties and Amici ................................................................. i

B. Rulings Under Review ..............................................................i

C. Related Cases ..................................................................i

TABLE OF AUTHORITIES .....................................................iv

GLOSSARY OF ABBREVIATIONS ................................................ viii

JURISDICTIONAL STATEMENT .................................................1

STATEMENT OF ISSUES ........................................................1

STATUTES AND RULES .........................................................2

STATEMENT OF THE CASE........................................................3

    I. Facts and Background ..................................................5

    II. Proceedings and Disposition...........................................10

SUMMARY OF THE ARGUMENT ...................................................11

    I.  ISSUE 1: The District Court Violated the U.S. Constitution's
Separation of Powers and Encroached on the Executive ..............................11

    II.  ISSUE 2: The Court Misapplied a Non-Applicable Standard to
Interpret the Pardon and Created a New Review Standard Outside
the Constitution for an Article II Preclusive Executive Action ....................11

    III.  ISSUE 3: Court Exceeded Article III Authority; DOJ Failed
to Act...........................................................................13

ARGUMENT ......................................................................13

    I.  The District Court Violated its Authority Under the U.S.
Constitution by Ordering that the President's Pardon Does Not
Apply to Mr. Wilson...........................................................15

        A.    Standard of Review ..............................................15

    B.    Specific Pardon Proclamation 10887 Excerpted Language (Add.1) and Application of the Law to This Case Shows Judicial Overreach of Authority that violated the U.S. Constitution and Harmed Mr. Wilson...........15

II.  ISSUE 2: The Court Misapplied a Non-Applicable Standard to Illegitimately Interpret the Pardon by Creating a New Review Standard Outside the Constitution for an Article II Preclusive Executive Action .......................................................................21

    A.    Standard of Review.................................................21

    B.    Judge Friedrich's Newly Fashioned Standard Uses an Inapplicable Administrative Review Standard ........................21

III.  ISSUE 3: The Court Exceeded its Article III Authority and Violated Mr. Wilson's Right to Liberty Under the Pardon While the DOJ Failed to Use its Authority ...................................................33

    A.    Standard of Review.................................................33

    B.    The District Court Violated its Constitutional Duty to Only Address Cases or Controversies ......................................33

    C.    The DOJ Failed to Use its Authority .........................39

CONCLUSION.................................................................41

CERTIFICATE OF COMPLIANCE.......................................44

CERTIFICATE OF SERVICE .............................................45

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Andrews v. Warden*,
   958 F.3d 1072 (11th Cir. 2020)..........................................................16, 28, 31, 38

*Arlington v. FCC*,
   569 U.S. 290, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013) ....................................30

*Biddle v. Perovich*,
   274 U.S. 480 (1927) ...............................................................................................16

*Buckley v. Valeo*,
   424 U.S. 122 ...........................................................................................................19

*Clinton v. Jones*,
   520 U.S. 681 (1997) ...............................................................................................38

*El-Shifa Pharm. Indus. Co. v. United States*,
   391 U.S. App. D.C. 51 (2010) ................................................................................16

*Ex parte Garland*,
   71 U.S. 333, 18 L. Ed. 366 (1867) ...................................................................16, 17

*Ex parte Grossman*,
   267 U.S. 87 (1925) .................................................................................................17

*Ex parte Wells*,
   59 U.S. (18 How.) 307 (1856) ...............................................................................22

*Flast v. Cohen*,
   392 U.S. 83 (1968) .................................................................................................38

*In re Greathouse*,
   10 F. Cas. 1057; 1864 U.S. App. LEXIS 296; 4 Sawy. 487; 2 Abb. 382 .............32

*INS v. Chadha*,
   462 U.S. 919 (1983) .........................................................................................18, 19

*Kisor v. Wilkie*,
   139 S. Ct. 2400, 204 L. Ed. 2d 841 (2019) ...............................................28, 29-30

*Loving v. United States*,
   517 U.S. 748 (1996) ...............................................................................................17

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ........................................................ 18-19

*Mellouli v. Lynch*,
575 U.S. 798 (2015) ................................................................30

*Mistretta v. United States*,
488 U.S. 361 (1989) ..........................................................18, 19, 38

*Morales v. Trans World Airlines, Inc.*,
504 U. S. 374, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992) ...................................31

*Muskrat v. United States*,
219 U.S. 346 (1911) ................................................................37

*Nixon v. United States*,
506 U.S. 224 (1993) ..............................................................26, 27

*Ohio Adult Parole Auth. v. Woodard*,
523 U.S. 272, 118 S. Ct. 1244, 140 L. Ed. 2d 387 (1998) ...................................38

*Pub. Citizen v. United States Dep't of Justice*,
491 U.S. 440 (1989) ................................................................27

*Schick v. Reed*,
419 U.S. 256 (1974) ................................................................38

*Trump v. United States*,
603 U.S. 593 (2024) ..........................................................11, 14, 16

*Udall v. Tallman*,
380 U.S. 1 (1965) ..............................................................25, 26, 28

*United States v. Ferreira*,
13 How. 40 (1852) ................................................................38

*United States v. Klein*,
13 Wall. 128 (1872) ................................................................18

*United States v. Nixon*,
418 U.S. 683 (1974) ................................................................18

*United States v. Sanders*,
133 F.4th 341 (5th Cir. 2025) ........................................................16

*United States v. Verrusio*,
762 F.3d 1 (D.C. Cir. 2014) ..........................................................15

*United States v. Wilson*,
  32 U.S. 161 (183) .......................................................................28

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579, 72 S. Ct. 863, 96 L. Ed. 1153,
  62 *Ohio Law Abs.* 417 (1952).....................................................18, 23

## Statutes & Other Authorities:

18 U.S.C. § 372 ......................................................................6, 7, 8

18 U.S.C. § 922(g)(l) ....................................................................7

18 U.S.C. § 924(a)(2) ....................................................................7

18 U.S.C. § 1512(k) .......................................................................7

18 U.S.C. § 2255 ..................................................................1, 10, 34

18 U.S.C. § 2255(d) .......................................................................1

18 U.S.C. § 3231 ...........................................................................1

18 U.S.C. § 3742(a) .......................................................................1

26 U.S.C. § 5841 ...........................................................................7

26 U.S.C. § 5861(d) .......................................................................7

26 U.S.C. § 5871 ...........................................................................7

28 U.S.C. § 1291 ...........................................................................1

28 U.S.C. § 2253 ...........................................................................1

20 Fed. Reg. 7904 ........................................................................25

D.C. Circuit Rule 28(a)(5) ...............................................................2

Fed. R. App. P. 22(a) .....................................................................1

Fed. R. App. P. 28(f) ......................................................................2

Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025)..................9, 15, 16, 20

U.S. Const. art. II ......................................................11, 12, 13, 21, 31, 33, 34

U.S. Const. art. II, § 2 ..........................................................11, 15, 18

U.S. Const. art. II, § 1, cl. 1 ............................................................23

U.S. Const. art. II, § 3 ................................................................23

U.S. Const. art. III .......................................................2, 5, 13, 37

U.S. Const. art. III, § 2 ...............................................................18

Black's Law Dictionary, 12th Edition, Thomas Reuters ...............21, 30

Black's Law Dictionary (5th ed. 1979)........................................31

Matthew Chou, Agency Interpretations of Executive Orders,
   71 Admin. L. Rev. 555 (2019)..............................................28

# GLOSSARY OF ABBREVIATIONS

**A#**      **-**      **Joint Appendix reference**

**BOP**      **-**      **Bureau of Prisons**

**Dkt.**      **-**      **Docket**

**DOJ**      **-**      **Department of Justice**

**D.D.C.**      **-**      **U.S. District Court for the District of Columbia**

**USAO**      **-**      **U.S. Attorney's Office**

**W.D. Ky. -**      **U.S. District Court for the Western District of Kentucky**

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231. Mr. Wilson filed an 18 U.S.C. § 2255 Motion (Dkt. 111) which the court denied while issuing a certificate of appealability. (Dkt 112, Order, March 13, 2025). A timely notice of appeal having been filed on March 28, 2025, this Court has jurisdiction pursuant to 18 USC § 2255 (d); Fed. R. App. P. 22(a); 28 U.S.C. § 2253; 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

# STATEMENT OF ISSUES

**ISSUE 1 TOPIC**: **District Court Violation of Separation of Powers**

Whether the district court violated the U.S. Constitution's designed Separation of Powers by exceeding judicial authority and overreaching into the Executive's Article II authority where the court decided it could interpret a sitting U.S. President's pardon while overriding his pardon executor; and violated Mr. Wilson's right to fairness and liberty by ordering him imprisoned when the United States Attorney General, the executor of the pardon, directed that the pardon did apply to his case.

**ISSUE 2 TOPIC**: **Misapplication of Law to Interpret an Article II Presidential Pardon *Executive Action* by Creating of a New Review Standard for an *Executive Action***

Whether the district court violated the Constitution by using the standard for reviewing an Executive agency regulation, rule or a legally binding Executive Order

for government agency action, such as the standard used under the Administrative Procedures Act related to implementing legislation vice using the U.S. Constitution for the Executive Action Pardon that is unrelated to executing legislation, appropriations, and enforcing the law.

**ISSUE 3 TOPIC**: **Article III Authority Exceeded by the District Court While DOJ Failed to Use its Authority**

Whether the district court violated its Article III authority to only address cases or controversies when there was no controversy here after the U.S. AG-level executing authority sent direction that the pardon applied to charges arising from firearms found during January 6 search warrant searches, where the court created its own controversy and had no jurisdiction to proceed in denying that the pardon applied. Likewise, whether the DOJ has inexplicably failed to execute the Pardon by not ordering its subordinate BOP to release Mr. Wilson as was done for another January 6th defendant at the end of February 2025 without court order.

## STATUTES AND RULES

Pursuant to Federal Rule of Appellate Procedure 28(f) and D.C. Circuit Rule 28(a)(5), pertinent constitutional provisions, statutes, and rules are either set forth in the Addendum to or contained within this brief.

## STATEMENT OF THE CASE

This appeal is about the violations of the U.S. Constitution and misapplications of law by the district court, that were instigated by unknown actors who decided without authority that he should return to prison despite his name being listed for release by the DOJ. The court's violations were compounded by subsequent and ongoing failure by U.S. AG senior officials to exercise their authority for Mr. Wilson's release. The actions and omissions all violated his fundamental Fifth Amendment Constitutional right where he was unlawfully, unfairly, and arbitrarily deprived of his liberty by being re-imprisoned since April 2, 2025, despite being fully pardoned by the sitting U.S. President on January 20, 2025.

There are no complex fact-finding issues involved in this case. The issues are about the U.S. Constitution and law.

Mr. Wilson went to D.C. for the rally on January 6, 2025. He was in a chat group where all kinds of hyperbolic rhetoric persisted given views on a stolen 2020 election and wrongful attacks on President Trump that extended through his first term. Mr. Wilson was a peaceful, non-violent protestor on January 6, 2021.

He was rapidly targeted shortly thereafter because he associated with "three percenters" whom the government asserted as being an extremist militia. His home was searched on 06/03/2022. January 6th case search warrants generally sought any evidence of any crime, where rather than asking for the phone, laptop, and a self-

surrender, raids were conducted to tear apart homes and hold family members at gunpoint out in the cold. All this while the FBI searched for clothes and items worn on January 6th, even after defendants such as Mr. Wilson had previously in voluntary interviews identified themselves in pictures as being present at the U.S. Capitol. Mr. Wilson wrongly possessed firearms having been convicted in 1997 and earlier of three felonies, none of which involved weapons. Mr. Wilson's firearms would not have been discovered but for the search. He was not under any prior investigation. The government-written plea and statement of the offense included both gun and D.C. charges. Everything was treated as "related to" January 6th, from the Rule 20 transfer of the case from Kentucky to the plea hearing, government sentencing memorandum, and judgment.

Although he had old felony convictions, he is not a drug dealer or career criminal. He is an electrician who loves his country. His criminal history is not relevant to the Presidential pardon. The Pardon Proclamation (Addendum 1) did not exclude anyone based on criminal history. Except for 14 named individuals who were only commuted, the full and unconditional pardon applied to all January 6 defendants. No other January 6th defendant remains imprisoned beside Mr. Wilson, where the Facts below show that others similarly situated to Mr. Wilson received the full benefit of the pardon despite having firearms and other contraband uncovered during execution of the January 6th search warrant.

The court below created the controversy about whether the pardon applied after the government said that the pardon did apply to Mr. Wilson, with the USAO D.C. correcting itself upon receiving guidance from above after mistakenly and without authority writing that it did not apply just weeks earlier. Mr. Wilson's sentence should have been vacated/set aside at that point since there was no longer any controversy among the parties, and the matter was moot. Instead, the court proceeded without any party controversy – outside of its Article III jurisdiction. The court created a new administrative standard by which to review a sitting President's pardon (that was not in controversy by the parties). The judge wrongly used the standard for reviewing an *Executive Order* or *agency action* such as one under the Administrative Procedures Act. But the application of the Pardon *as an Executive Action* falls strictly under the U.S. Constitution, where without party controversy, it was non-reviewable and should not have been subjected to Article III interpretation.

## I. Facts and Background:

Mr. Wilson traveled to Washington, D.C. and attended the Ellipse rally and then marched to the Capitol. He was a non-violent protestor. He voluntarily met with the FBI in March 2021 for an interview and identified himself at the Capitol.

On June 3, 2022, the FBI executed a search warrant at Mr. Wilson's home in the Louisville, Kentucky area for alleged January 6, 2021, offenses. (A99). Items seized ranged from clothes to firearms.

Unlike almost every other January 6th case, there is no accompanying federal arrest warrant on any federal docket for arrest simultaneous with the search.

Mr. Wilson had prior felonies from 25+ years prior to the search and should not have possessed firearms having not sought expungement under Kentucky law.

Mr. Wilson was arrested by Kentucky state law enforcement on 06/03/2022 and taken to state court. Kentucky initiated state charges and prosecution of Mr. Wilson for being a felon in possession of firearms and an unregistered short-barreled firearm. (Sealed Presentence Report Dkt. #60 at 26 refers to KY case 22-F-004227 then 22-cr-002031 for his 06/03/2022 arrest. None of those records are on the district docket).

The DOJ coordinated with Kentucky officials to preempt Kentucky's ongoing prosecution. The state case was dismissed on 2/08/2023 (*id.*) after the DOJ indicted Mr. Wilson in the W.D. Ky. for firearm charges on 01/18/2023. (A17-19).

In revised Dkt.1, filed 05/17/2023 almost a year after the search, (the court removed the original complaint and statement of facts), the government did not allege the Section 372 conspiracy charge to which Mr. Wilson later pled guilty. (A28).

The D.C. indictment against Mr. Wilson was filed 12/06/2023. (A29-31).

A superseding indictment was filed in D.C. on 04/17/24. (A32-46). That added a co-defendant, the 18 U.S.C. § 1512(k) conspiracy charge, and reference to

militia-associated "three percenters." (A32-35). The conspiracy charge references a Telegram group where discussions involved whether to take firearms. (A36-39).

The government filed a second superseding indictment against Mr. Wilson on 05/16/24. This added the charge of 18 U.S.C. § 372 (Conspiracy to Obstruct or Impede Officers) as Count 1. (A47).

The W.D. Ky. gun charges transferred under Rule 20 to D.D.C. case 1:24-cr-00238-DLF ((Count 1: Possession of a Firearm by a Prohibited Person, 18 U.S.C. Sections 922(g)(l) and 924(a)(2); and Count 2: Possession of an Unregistered Firearm, 26 U.S.C. Sections 5841, 5861(d), and 5871)) as agreed to around May 7, 2024, and filed on 05/16/2024. (A16-27).

The Rule 20 transfer showed a related case – the one with Mr. Wilson's January 6 charges: 23-cr-427-1. (A22).

The government filed an information (A47-50) against just Mr. Wilson on 05/16/24 since he agreed to plead guilty to Count One 18 U.S.C. § 372 in D.D.C. 23-cr-427 and to the gun charges. Mr. Wilson entered into one plea agreement for 18 U.S.C. § 372 and the gun charges on 05/15/2024. The same plea agreement was filed in cases 23-cr-427-DLF and 24-cr-00238-DLF. (A51-64 and A77-90).

Mr. Wilson signed a single statement of the offense for all charges to which he pled guilty. (A65-76 and A91-102).

Judge Friedrich held a single plea hearing for cases 23-427-1-DLF and 24-238-DLF on May 17, 2024. (A135-59, Transcript).

A single Presentence Investigation Report was completed. (Sealed).

The defense filed a single sentencing memorandum with a reply. (A103-13; and A114-19).

The DOJ filed a single sentencing memorandum. (Dkt. #67).

The Court held a single sentencing hearing on 08/28/2024. (A160-230 Transcript).

The court issued a judgment order in 24-cr-00238-DLF sentencing Mr. Wilson to 60-months imprisonment, to run concurrently with Count 1ss in Case # 23cr427. (A120-27).

For related case 23-cr-00427-DLF, the Court ordered 60-months imprisonment for the Count 1ss 18 USC § 372 charge, to run concurrently with Counts 1 and 2 in Case # 24-cr-238-DLF.

Wilson did not file a notice of appeal, and the court's judgment became final.

Mr. Wilson was remanded into custody on 08/28/2024.

On January 20, 2025, the President issued "a full, complete and unconditional pardon to. . . individuals convicted of offenses _related to_ events that occurred at or near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025) ("Presidential Pardon" or "pardon") (emphasis

added). The Pardon Proclamation and President's speeches added further context. The Bureau of Prisons (BOP) was notified of who was to be released. The BOP's Sentencing Computation Center had to do its work before prisons effected release. Early morning on January 21, 2025, Mr. Wilson was released from FCI Beckley, W.V.

A few days later his mother received a call that he should report back to prison, apparently from someone in the BOP. No documentation or name was ever provided as to who decided upon what authority that the Pardon did not apply.

The DOJ consistently wrote in court filings around and after mid-February 2025 based on U.S. Attorney General (AG) level direction to U.S. Attorneys that the January 6th Pardon applied to defendants who had charges for contraband found during January 6 searches. Their cases were dismissed under a government Rule 48(a) motion due to the Pardon or the government declining to prosecute:

M.D. Fla.      - United States v. Ball, 24-cr-97
W.D. Tex.     - United States v. Guy Reffitt, 4:22cr289
D. Md.         - United States v. Sattler, 1:23-cr-00438
M.D. Fla.      - United States v. Jeremy Brown, 21-cr-00348 ((Limited remand for Rule 48(a) dismissal under pardon))
D. Md.         - United States v. Elias Costianes, Jr., 21-cr-00458 ((Limited remand for Rule 48(a) dismissal))
D.D.C.        - United States v. Bertino, 22-cr-00329 (weapons charge transferred from Western District of North Carolina to D.C. and dismissed along with January 6 offenses.)

**II.  Proceedings and Disposition**:

Mr. Wilson's attorney filed for a stay of his return to prison. (A231-34). The court granted the stay. The AUSA and interim U.S. Attorney without authority from the U.S. AG as Pardon executing level or the sitting President, mistakenly used their own interpretation of the J6 Pardon, and wrote that it did not apply. (A235-37). The court then issued a minute order that the Pardon did not apply. (A244).

Mr. Wilson filed an *unopposed* § 2255 Motion to vacate the gun charges' sentence under the Pardon on 02/24/2025. Having received guidance (which the government called "clarity" without admitting to their prior decision being unauthorized and a mistake) from the U.S. AG pardon-execution authority, the government filed its response that the Pardon applied. (A252-55). In response to a court order to supplement the "interpretation" of the Pardon, the government mistakenly equated the *Executive Action* to an *Executive Order*, treated it as if an agency rule, and wrote about deference as if this were an administrative agency under *Auer* or post-*Chevron* deference interpreting regulations related to legislation, and applying the standard of "reasonable interpretation." (A257-60). Judge Friedrich ordered that the Pardon did not apply to Mr. Wilson's gun charges, and he must return to prison. (A261-62 Order; A263-81 Opinion; A282-343 hearing transcript).

Mr. Wilson timely filed the present appeal.

## SUMMARY OF THE ARGUMENT

Each of the three issues presented herein concludes that the Pardon applies to Mr. Wilson, and his sentence must be vacated/set aside with his release from prison.

## I. ISSUE 1: The District Court Violated the U.S. Constitution's Separation of Powers and Encroached on the Executive.

Article II of the Constitution of the United States, section two, contains this provision: "The President shall have power to grant reprieves and pardons for offences against the United States, except in cases of impeachment." Congress may generally make no law about Presidential pardons. Congress can't institute an interpretive "check" against a pardon lawfully issued. Yet the district court chose to do so. The Constitution does not contain any review standard because the power is conclusive and preclusive. *Trump v. United States*, 603 U.S. 593, 608 (2024).

The judiciary here encroached on the Executive authority as well as impairing its ability to perform its functions related to the Pardon.

## II. ISSUE 2: The Court Misapplied a Non-Applicable Standard to Interpret the Pardon and Created a New Review Standard Outside the Constitution for an Article II Preclusive Executive Action

This argument addresses the district court Order and Opinion (A261-62 and A263-281 respectively) that denied Mr. Wilson his Constitutional right to liberty under the Pardon that the executing authority conveyed applied to him.

Past cases that required court review of a pardon involved controversy, such as where a party was aggrieved by not receiving the benefit because of a government decision, arguing to remove conditions, or claiming other than what was in the pardon. Except for the present, cases usually involved pardons from presidents no longer in office if even still alive. Here we have the benefit of the sitting President who issued the Pardon where no facts suggest he did not give the U.S. AG guidance on how to proceed under his intent and words when contraband was discovered during a January 6th search. Past courts when presented with controversy about a pardon examined the four corners of the pardon, Article II of the Constitution, whether the pardon infringed on any other branch, and what the pardon directed and allowed, with minimal, non-complex fact review.

Past courts did not create or modify an administrative review standard such as that used for regulations or Executive Orders that fell under the Administrative Procedure Act and were related to implementing legislation. That appears to have been done here as if this were a controversy over executive agency implementation of legislation. The judge's overriding of the Executive Branch's Preclusive Article II authority was outside the court's jurisdiction and authority where she used an inapplicable standard.

## III.  ISSUE 3: Court Exceeded Article III Authority; DOJ Failed to Act

This part of the argument addresses the judiciary's violation of the U.S. Constitution where it can only address cases or controversies. Mr. Wilson's criminal trial was closed. There was no controversy among the parties when the Executive wrote that the Pardon applied to Mr. Wilson. The matter became moot. But the judge created her own controversy over interpreting the Pardon to proceed, with the DOJ believing and acting as if it is now impaired from ordering its BOP to release Mr. Wilson.

## ARGUMENT

The case raises substantial Constitutional issues and issues of law where a judge invaded the Executive's Article II authority and created a new standard to review and interpret an Executive Action when there was no controversy. Personnel turnover in DOJ apparently led to loss of historical memory about the guidance issued in mid-February 2025 for the pardon and search contraband. Given the judge's overreach, DOJ leadership did not order the Bureau of Prisons (BOP) to release Mr. Wilson. DOJ leaders thereby subjugated the President's authority to the district court judge, who exceeded her authority.

Notably, in Jeremy Brown's case where he had been convicted in the Florida Middle District for gun and explosives possession charges, and he was not released on January 20, 2025, he was released from the BOP at the end of February 2025

upon U.S. AG-level direction to the BOP – because the Pardon applied. Personnel turnover issues or personal judgment in impaired paralysis have deprived Mr. Wilson of his liberty rights just as the court has done.

Despite what was written in the Appellee's Brief about "executive interpretation," (Doc. #2141205 at 12, 13, 15, 16) no facts suggest that application of his Pardon did not come at the President's direction in February 2025. While the Appellee assumed there was "interpretation" after the initial mistaken position by the interim U.S. Attorney for D.C. in early February 2025, in other cases it was clear that "guidance" or "direction" came from higher. "After consulting with the Department of Justice's leadership, the United States has concluded that the President pardoned Mr. Costianes of the offenses in the indictment. This determination by the Executive is 'conclusive and preclusive.'" *United States v. Elias Nick Costianes*, USCA4 Appeal 24-4543 Dkt. 20-1 at 3 (Quoting *Trump*, 603 U.S. at 608). For the U.S. Attorney for Maryland, higher can only have been at U.S. AG level as Pardon executor, where direction can have been issued by the President. Similar language was used in another case that referred to "consultation with Department leadership" and the "position." *United States v. Jeremy Brown*, USCA11 Appeal 23-11146 Dkt. 65 at 5. In no other case but the present did a U.S. Attorney's office refer to or rely on "interpretation." That unfortunate language about "interpretation" opened the door for Judicial encroachment on the Executive.

## I. **The District Court Violated its Authority Under the U.S. Constitution by Ordering that the President's Pardon Does Not Apply to Mr. Wilson**

### A. **Standard of Review.**

The U.S. Constitution is the law of the land. The standard for a question of law is de novo. *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("Because [the issue at hand] presents a question of law, we review this contention de novo.").

### B. **Specific Pardon Proclamation 10887 Excerpted Language** (Add1) **and Application of the Law to This Case Shows Judicial Overreach of Authority that violated the U.S. Constitution and Harmed Mr. Wilson.**

## A PROCLAMATION

This proclamation ends a grave national injustice that has been perpetrated upon the American people over the last four years and begins a process of national reconciliation.

Acting pursuant to the grant of authority in Article II, Section 2, of the Constitution of the United States, I do hereby:

(b) grant a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021;

The Attorney General shall administer and effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above, and shall ensure that all individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, who are currently held in prison are released immediately. The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive.

Executive Action Proclamation10887 90 FR 8331

The Founders saw a pardon as an act of grace that served the public interest, as is intended in the above Pardon. *United States v. Sanders*, 133 F.4th 341, 394 (5th Cir. 2025). See also *Biddle v. Perovich*, 274 U.S. 480, 486 (1927). President Trump stated his intent in the Proclamation and in speeches that he saw this for reconciliation and as rectifying injustices, such as the invasive, unnecessary FBI raids, lengthy, and unnecessary pretrial incarcerations with no family visits, unsanitary jail conditions and inedible food to name a few.

Where, as here, the Pardon has been properly bestowed and acted upon under the President's exclusive authority, it is not "subject to further judicial examination," *Trump v. United States*, 603 U.S. 593, 608 (2024). This was further confirmed in this Circuit which held the Executive,

> possesses a significant degree of exclusive, preclusive Article II power in both the domestic and national security arenas. See, e.g., *Ex parte Garland*, 71 U.S. 333, 380, 18 L. Ed. 366 (1867) (pardon power 'of the President is not subject to legislative control.').

*El-Shifa Pharm. Indus. Co. v. United States*, 391 U.S. App. D.C. 51, 73 (2010).

"Ordinarily, the President relies on the Department of Justice—specifically, the Attorney General and Office of the Pardon Attorney—to administer the pardon process." *Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020). The Proclamation spells out that the U.S. AG will execute and direct the BOP to release any pardoned prisoners. Yet, after the DOJ wrote that the Pardon applied to Mr. Wilson (A253) having made a mistake a few weeks earlier, the judge decided to

encroach on the Executive and provide her own interpretation of the Pardon regarding Mr. Wilson and to counter Executive discretion by declaring that the Pardon doesn't apply. (A261-62).

The Constitution does not use the term "Separation of Powers," but certain authorities are given to each of the three branches by the U.S. Constitution. For pardons, the President's power is plenary. "The Executive can reprieve or pardon all offenses after their commission, either before trial, during trial or after trial, by individuals, or by classes, conditionally or absolutely, and this without modification or regulation by Congress." *Ex parte Grossman*, 267 U.S. 87, 119-20 (1925) ((quoting *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380 (1867)).

For pardons, with the power being absolute if a pardon does not violate another part of the Constitution (impeachment for example), the "basic principle of our constitutional scheme [applies] that one branch of the Government may not intrude upon the central prerogatives of another." *Loving v. United States*, 517 U.S. 748, 757 (1996). "The clear assignment of power to a branch, furthermore, allows the citizen to know who may be called to answer for making, or not making, those delicate and necessary decisions essential to governance." *Loving*, 517 U.S. at 758.

While there is not a concrete wall between branches, there are connective synapses and oversight, such as impeachment for example where Congress can act against a member of the judiciary or a president. The Constitution "enjoins upon its

branches separateness but interdependence, autonomy but reciprocity." *United States v. Nixon*, 418 U.S. 683, 707 (1974)((Quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S., at 635 (Jackson, J., concurring)). In examining Article III judges' participation in the Sentencing Commission, the Court held that under the Separation of Powers doctrine, no branch may impair another in performing its duties under the Constitution. *Mistretta v. United States*, 488 U.S. 361, 397-408 (1989).

Normally such matters involve legislation and judicial review of laws. "In *United States v. Klein*, 13 Wall. 128 (1872), an Act of Congress was struck for encroaching upon judicial power, but the Court found that the Act also impinged upon the Executive's exclusive pardon power. Art. II, § 2.*" Ins v. Chadha*, 462 U.S. 919, 999 (1983). *Chadha* at 1000 supports examining disruption and impairment by one branch against another to determine overreach.

The Judiciary's role is in the U.S. Constitution under Article III section 2 where it is charged to resolve cases or controversies. The Judiciary was established as "a Third Branch of Government with the 'province and duty . . . to say what the law is' in particular cases and controversies." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). The judiciary cannot address political questions and particularly applicable here, the court does not have the province "to enquire how the executive, or executive officers, perform duties in which they have a discretion." *Marbury* at

170. Supposedly "the Framers 'built into the tripartite Federal Government . . . a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other.'" *Mistretta v. United States*, 488 U.S. 361, 381-82 (1989) (quoting *Buckley v. Valeo*, 424 U.S., at 122). See also *INS v. Chadha*, 462 U.S. 919, 951 (1983). The history of cases indicates that the courts are usually the safeguard when either the Executive or Congress want to intrude outside their Constitutional scope. But in this case, this Court is being called upon to safeguard against the encroachment on the Executive by the district court.

An Executive Action is not a law for the district court to examine. While a pardon has legal effect, it is not a law. As stated in *Marbury*, the court should not interfere with the discretion of the Executive, especially here when the President is the only person with the authority to take issue with how the U.S. AG executes his Pardon. Further, there is no controversy between the parties for the judiciary to be involved with since new DOJ personnel began catching up with details and had guidance "consultations" with AG level on this matter in mid-February 2025.

Because Judge Friedrich has usurped the U.S. AG who was designated as Pardon executor, in this case the judiciary is impairing the Executive's ability to execute as directed. No judicial role as applicable to this case allowed her to create her own interpretation of the January 6 Pardon Proclamation. And apparently some members of the DOJ are experiencing paralysis equal to impairment regarding their

inherent and delegated authority because they give deference where it is undeserved to a judicial ruling that is outside the scope of a controversy. The impaired have left Mr. Wilson unjustly imprisoned after subrogating the Executive to the Judiciary in a matter where the Judiciary should have just declared the matter moot from a court legal standpoint, and the DOJ should have ordered Mr. Wilson released.

This is a strict matter of law where the district court violated the Separation of Powers doctrine and aggrandized itself into the Executive's Constitutional authority. A judge does not get to speak for and block the President or his executing agent when he issues a Pardon. Mr. Wilson remains denied his Constitutional right to liberty as given under the full, unconditional Pardon that the U.S. AG conveyed applies to him.

Because the district court violated the Constitutional authority of the Executive Branch, this Court should overturn the Order at A261-62 and hold that the pardon applies as determined by the Executive, with the government ordered to effect Mr. Wilson's release since it appears to be awaiting a court Order despite already having the authority under the Pardon.

II.  **ISSUE 2: The Court Misapplied a Non-Applicable Standard to Illegitimately Interpret the Pardon by Creating a New Review Standard Outside the Constitution for an Article II Preclusive Executive Action**

A.  **Standard of Review.**

As in Issue I above, the standard is de novo because this is a matter of law and application of a not previously used review standard for a Presidential Pardon.

B.  **Judge Friedrich's Newly Fashioned Standard Uses an Inapplicable Administrative Review Standard**.

An Executive Action differs from an Executive Order. "An Executive Order is issued by or on behalf of the President and is usually intended to direct or instruct the actions of executive agencies or government officials, or to set policies for the Executive Branch to follow." Black's Law Dictionary, 12th Edition, Thomas Reuters. It is commonly accepted, particularly since President Trump's Executive Orders have received news coverage (often critical), that Executive Orders are formal and binding, and must link to an act by Congress or the U.S. Constitution. The most well-known relate to regulations to be established for laws the executive will execute. As inferred in the definition, they relate to the Executive branch personnel and agencies. They can be rescinded by the president.

The White House distinguishes Executive Orders from Executive Actions on its web site. Black's Law Dictionary has no definition for an Executive Action. Review of many Executive Actions shows them to encompass a broad swath of what

the President wants to implement or sees as policy that others should adopt. Some may be calls for Congress to act or not act. In this case the Executive Action is the January 6th Pardon Proclamation, which has formal legal effect once issued. While the Pardon for this case is classified as an Executive Action and directed the U.S. AG and BOP to act, it is not an Executive Order because the central theme and intent is to provide grace to non-government civilians and to support the public interest of reconciliation.

Because Executive Orders and agency regulations add requirements to implement legislation that leaves out details (i.e. to fill in the gaps) they are often brought to courts in controversy by parties opposed to the government's implementation. Administrative standards have been applied either under Chevron/post-Chevron deference, a standard contained in the statute at issue itself, or another special standard developed by the courts for specific topics. "No statute has ever been passed regulating [pardon power] in cases of conviction by the civil authorities. In such cases, the President has acted exclusively under the power as it is expressed in the constitution." *Ex parte Wells*, 59 U.S. (18 How.) 307, 309 (1856).

First a comment stated as fact in Judge Friedrich's Opinion should be addressed. She wrote, "From January 20 through February 18, the Department repeatedly and unequivocally stated in courtrooms across the country that the 'plain' and 'unambiguous' language of the pardon does not apply to criminal offenses that

did not occur at or near the Capitol on January 6." (A265). The government addressed this, but the fact is that the U.S. AG never authorized this statement on behalf of the President in "multiple cases across the country" – quite the opposite. The Biden-regime U.S. Attorneys had not resigned and apparently did not support President Trump's policies, not only those related to the pardon. And, around the February 14-16, 2025 time, the U.S. AG level leaders disseminated guidance on the Pardon, so others would not make the same mistake of injecting their opinion in lieu of the President's intent for the Pardon, (as happened in early February in the D.C. USAO for this case with an inexperienced interim U.S. Attorney). As was his right to put into effect all his policies by appointing people who would support the administration's policies, over the weekend of February 15, 2025, all U.S. Attorneys holdovers were either fired or chose to resign. This is quite standard for a new administration.

The Constitution vests in the Executive the power to execute the laws. See U.S. Const. art. II § 1, cl. 1; id. § 3; *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587, 72 S. Ct. 863, 96 L. Ed. 1153, 62 *Ohio Law Abs*. 417 (1952). The DOJ consistently wrote in court filings around and after mid-February 2025 based on U.S. Attorney General (AG) level direction to U.S. Attorneys that the January 6th Pardon applied to defendants who had charges for contraband found during January 6 searches, where but-for the search they would not have been charged. For cases

23

on appeal outside of the D.D.C., either vacaturs were requested or motions were submitted for limited remand for Rule 48(a) dismissal. Cases with charges for contraband found during January 6th searches were dismissed under a government Rule 48(a) motion due to the Pardon or the government declining to prosecute:

| | |
|---|---|
| M.D. Fla. | - United States v. Ball, 24-cr-97 |
| W.D. Tex. | - United States v. Guy Reffitt, 4:22cr289 |
| D. Md. | - United States v. Sattler, 1:23-cr-00438 |
| M.D. Fla. | - United States v. Jeremy Brown, 21-cr-00348 ((Limited remand for Rule 48(a) dismissal under pardon)) |
| D. Md. | - United States v. Elias Costianes, Jr., 21-cr-00458 ((Limited remand for Rule 48(a) dismissal)) |
| D.D.C. | - United States v. Bertino, 22-cr-00329 (weapons charge transferred from Western District of North Carolina to D.C. and dismissed along with January 6 offenses.) |

The government made clear that crimes committed after or outside a January 6th search would be fact intensive for review, but as in the *Taranto* case in the D.D.C., (and Ed *Kelley* in another jurisdiction) review showed the acts were not related to January 6, 2021. In Mr. Wilson's case, the USAO for D.C. jumped the gun and mistakenly decided to give their opinion in early February. That mistake was quickly corrected within three weeks. There was no change involving any "interpretation." There was a change in direct communications. The judge's reference to judicial opinion on the Pardon in the 9th Circuit for Mr. Martin's case does not represent the U.S. AG direction or President's intent. (*Id.*). Aside from the judge who has no authority there to interpret the Pardon, if the interim U.S. Attorney in the E.D. Cal. where the Martin case resides wants to disagree with the U.S. AG on whether the

Pardon applies, he can find another job since the executor disseminated direction. It is not up to any judge or USAO to impede application of the Pardon just because they do not like the defendant, the President, or the pardon itself.

The Opinion seems almost hostile toward the government correcting a mistake and presenting a new position that aligns with the executing authority's guidance. (A262-75). She later holds this against the government by calling it inconsistent. What happened here for "change" is very allowable under the admin standard. In *Udall*, an Executive Order was at issue related to oil and gas leases. There were some changes as to when permits would be issued and where leases would be allowed. Change and adaptation for a particular aspect led to "Since their promulgation, the Secretary has consistently construed both orders not to bar oil and gas leases; moreover, this interpretation has been made a repeated matter of public record." *Udall v. Tallman*, 380 U.S. 1, 4 (1965). The court did not place any detriment because of change: "However, on October 14, 1955 -- 35 days after it was promulgated but before it went into effect, and years before the respondents entered the picture -- Public Land Order No. 1212 was amended to delete the references to the mineral-leasing laws. 20 Fed. Reg. 7904." *Udall*, 380 U.S. at 8.

The re-direction of USAO's after mid-February released prisoners and kept others from prison – except for this case. The government timely presented its correction, but the judge gave it no credit.

The rest of the Opinion discusses a non-applicable standard that could apply to an Executive Order, regulation, or rule that addresses legislation but not to an Executive Action Pardon tethered to the Constitution: "If, therefore, the Secretary's interpretation is not unreasonable, if the language of the orders bears his construction, we must reverse the decision of the Court of Appeals." *Udall*, 380 U.S. at 18. For the Pardon by a sitting U.S. President, it is not in a judge's authority as was done here to intervene where no controversy exists, and override the U.S. AG who speaks for the President as to what is reasonable and bears construction. The court created a standard not applicable to Pardons. In fact, the issue now is whether the court had authority for what can be viewed as a non-justiciable issue that is political by nature in a goal to allow reconciliation under Constitutional authority. "On writ of certiorari, petitioner appealed order of the United States Court of Appeals for the District of Columbia affirming that petitioner's request for a declaration that his impeachment conviction was void was a nonjusticiable political question." *Nixon v. United States*, 506 U.S. 224, 226 (1993). Like here where there is no standard for a court to assess applicability of a Presidential pardon when it disagrees with both DOJ and defendant, "The Court held the controversy was a nonjusticiable political question as there was a textually demonstrable constitutional commitment of the issue to the legislature and a *lack of judicially discoverable and manageable standards for resolving* it. The Impeachment Clause granted sole

26

authority over impeachments to Congress and did not require or provide a means of judicial review." *Nixon*, 506 U.S. at 226. (Emphasis added).

Judge Friedrich's opinion that the act/crime must be tethered to January 6 does not accord with other cases. The Oath Keepers for example, as well as hundreds of January 6th cases involved the government being allowed to present evidence such as texts as "intent" despite those being months and years before and after January 6, 2021.  No judge argued about "related to" if the government whispered the word "intent." Mr. Wilson's search warrant was strictly tethered to January 6th and but-for that search, there would be no charges that have him imprisoned despite being pardoned. See Add.5-7 search for weapons for January 6th.

As to review standards, there is no balancing test or other that can be imposed over the sitting President and his direction and intent for a Pardon:

> The justification for our refusal to apply a balancing test in these cases, though not always made explicit, is clear enough. Where a power has been committed to a particular Branch of the Government in the text of the Constitution, the balance already has been struck by the Constitution itself. It is improper for this Court to arrogate to itself the power to adjust a balance settled by the explicit terms of the Constitution.

*Pub. Citizen v. United States Dep't of Justice*, 491 U.S. 440, 486 (1989).

If considering use of an administrative standard, an Executive Order is not the same as an Executive Action, and post-Chevron the requirement for deference changes as related to agencies making rules and regulations. Nothing indicates that

the Supreme Court ever intended *Udall* (using Auer deference) or Chevron

deference to be applied to Presidential Executive Action pardons:

> The Supreme Court has ruled that deference should be accorded to an executive agency's interpretation of an executive order it is charged with administering. *Udall v. Tallman*, 380 U.S. 1, 4, 16-18, 85 S. Ct. 792, 13 L. Ed. 2d 616 (1965); see also Matthew Chou, Agency Interpretations of Executive Orders, 71 Admin. L. Rev. 555, 575-89 (2019) (exploring possible justifications for deferring to executive agency interpretations of executive orders). The Court explained that if an agency's 'interpretation is not unreasonable' and 'the language of the order[] bears [its] construction,' 'courts must . . . respect it.' *Udall*, 380 U.S. at 4, 18. Although deference to agencies in other contexts engenders debate, see, e.g., *Kisor v. Wilkie*, 139 S. Ct. 2400, 2425, 204 L. Ed. 2d 841 (2019) (Gorsuch, J., concurring in the judgment), deference to an agency's interpretation is sensible in this context, where a **court cannot even review a pardon that a recipient has not presented to it,** see *Wilson*, 32 U.S. at 161-63 (explaining that 'where the benefit [of a pardon] is to be obtained through the agency of the court, [the pardon] must be brought regularly to the notice of that tribunal').

*Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020)(Emphasis added)

The DOJ mistakenly opened the door when it wrote that *Udall* should be used

for deference. (A258) *Udall* used what was known as *Auer* deference. That is used

for an agency's interpretation of its own rules or regulations, where factors such as

consistency may be considered. Further, *Kisor* set out guidelines for using *Auer*. "[1]

the possibility of deference can arise only if a regulation is genuinely ambiguous.

And when we use that term, we mean it—genuinely ambiguous, even after a court

has resorted to all the standard tools of interpretation." *Kisor v. Wilkie*, 588 U.S. 558, 573 (2019). And "if there is only one reasonable construction of a regulation—then a court has no business deferring to any other reading." *Id*. at 573. In other words, there is no ambiguity. The standard tools of interpretation (for federal agency rules) include text, history, structure and purpose, and must include significant analysis of the underlying regulation with facts. *Id*. at 575.

There never was impartiality or analysis. On the defense motion to stay the prison report date, Judge Friedrich said without any brief or direct presentation of the Pardon in a brief that it did not apply.(A12, A244 Minute Orders). Her decision had been made. Tripping over itself, the government continued to argue as if the USAO D.C. had interpreted the Pardon and it should be treated like an agency rule. (A252-255). Then at the hearing for the court-ordered supplemental filing as to why the Pardon applied, first it said there was no ambiguity and then said there was ambiguity. (A330-31). Judge Friedrich, after ordering the government's supplement (A257-260) as window dressing about why the pardon applied (having previously determined it did not), and without any brief in due process by and for Mr. Wilson, immediately determined that there was no possible ambiguity in the broad Pardon. (A273). Despite already failing the government on the standard for a federal agency rule, the judge continued to the next step: "Under Auer, as under Chevron, the agency's reading must fall 'within the bounds of reasonable interpretation.'" *Kisor*

*v. Wilkie*, 588 U.S. at 576 ((Quoting *Arlington v. FCC*, 569 U. S. 290, 296, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013)). The judge said the DOJ was unreasonable (A274). The USAO D.C. never brought forth that there was not any interpretation involved at their level, and that case-intensive fact analysis had been conducted at White House level prior to the direction from U.S. AG level that the Pardon applied to Mr. Wilson.

Mr. Wilson and the DOJ should have withdrawn the motion for stay with the pardon (not yet briefed by Mr. Wilson) from the court's attention once all parties agreed the pardon applied. The DOJ can order the BOP to release Mr. Wilson, and it is unclear why that hasn't happened.

In argument the DOJ erroneously referred to the decorative pardon certificate that did not fully convey the scope of the Pardon. (A235-37). The certificate seemed hastily done and omitted the term "related to" – instead making it appear that Pardon was only for acts at the Capitol on January 6, 2021. There are many cases using the term "related" or "relating to." The 12th Edition of Black's law dictionary does not define "relate to" or "related to." Under "relate" the appropriate use would be "in connection with." From a past edition of Black's: "To relate to means 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.' In ordinary parlance, one thing can 'relate to' another even if it also relates to other things." *Mellouli v. Lynch*, 575 U.S. 798, 814 (2015) Thomas

and Alito dissent ((Quoting *Morales v. Trans World Airlines, Inc.*, 504 U. S. 374, 383, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)).

Under common sense usage, it should be clear that the January 6th search warrant executed against Mr. Wilson "related to" his time at the Capitol on January 6, 2021. (Add.5-7). It specifically mentions weapons multiple times since the government was trying to build a conspiracy case not tethered to the actual date of January 6th – as was done for Oath Keepers and Proud Boys. The escalation of his charges to a superseding indictment that included conspiracy show that culmination. (A32-46 vice A28 and A29-31). Mr. Wilson was allegedly a Three Percenter which the FBI classified as an extremist militia. His texts that were not on January 6th are shown in an extremely huge government sentencing memorandum even after he pled guilty to select charges. (Dkt. 67 and hearing transcript A160-230).

The Appellant has found no pardon case where an Administrative Procedure Act (or similar) standard was used in the pardon controversy case. There have been many Presidential pardons over the years, and all examined the pardon language and the claim that was opposed by the other party. The *Andrews* case arose from a disagreement over sentencing re-computation after commutation where the defendant applied for commutation of one sentence but had already served another. He wanted credit for the sentence already served when the pardon was issued. The

Court didn't opine over whether the Pardon should apply to start with. Facts drove the analysis. He never asked for relief from the first sentence and the pardon language didn't mention it. Further, the review didn't start until after President Obama left office. Here we have a sitting President who issued the Pardon and who speaks with the U.S. AG executor. As another example:

> Therefore, I, Abraham Lincoln, president of the United States, do proclaim, declare and make known to all persons who have directly or by implication participated in the existing Rebellion, except as hereinafter excepted, that a full pardon is granted to them, and each of them, with restoration of all rights, if third parties shall have intervened, and upon the condition that every such person shall take and subscribe an oath. . . .

*In re Greathouse*, 10 F. Cas. 1057; 1864 U.S. App. LEXIS 296; 4 Sawy. 487; 2 Abb. 382.

For the above, the controversy involved the pardon's condition of taking a loyalty oath. Other controversies arose about land. In reviewing the history of pardons going back to the king and what America's founders considered, the court wrote "all offenders embraced within the description, and all persons included within the classes designated are, unless specially excepted, entitled to the benefit of the pardon." *Id*. There was no interpretation using an agency regulation review standard. The Vietnam pardon was broad but did involve the requirement to know which agency rule may have been violated where it covered "any offense between August 4, 1964 and March 28, 1973 in violation of the Military Selective Service Act or any rule or regulation promulgated thereunder." (Add.2). But back to the Civil

War, President Johnson issued another pardon that made no mention of a loyalty oath. (Add.3).

President Trump's full and unconditional pardon was clear about who was excepted. Had the court or DOJ been fact-intensive here (which they were not) they would have examined the search warrant, the escalation of charging documents, and the Pardon in full context where the top portion and the words "related to" did not fall under *Udall*, *Auer*, or *Chevron* for interpretation as if the DOJ issued the Pardon as a regulation or rule. The President's power under Article II (Add.4) as delegated to his U.S. AG is not subject to being overridden by the judiciary. It is preclusive of that.

Because the judge created a non-applicable standard to evaluate the Pardon where complete deference should have been afforded to the President's executor and her office's direction, and where the judge created the controversy where no Opinion or Order was needed, this Court must overturn the Order and set aside the sentence for the record. Perhaps the timid souls in DOJ with responsibility will act to free Mr. Wilson since they currently have subrogated themselves to the judiciary given the out of judicial scope Order that the Pardon doesn't apply.

III. **ISSUE 3: The Court Exceeded its Article III Authority and Violated Mr. Wilson's Right to Liberty Under the Pardon While the DOJ Failed to Use its Authority**

A. **Standard of Review.**

While this topic contains a limited factual analysis, it largely requires decision based on law. Thus, the Court should review this issue de novo.

B. **The District Court Violated its Constitutional Duty to Only Address Cases or Controversies**.

There was initially a controversy when some person with unknown authority contacted Mr. Wilson's mother around January 22-25 to state that he had to return to prison even though he had been released under the pardon. The DOJ has not truthfully revealed what rogue element was involved. Mr. Wilson erroneously believed the federal caller must have been the FCI Beckly W.V. warden's office. Mr. Wilson's then attorney filed a Motion to ask the district court to stay what was presumed to be a BOP order where the U.S. Marshals might show up unexpectedly at Mr. Wilson's home to arrest him. Further Appellant's investigation, which should have been done by the DOJ, uncovered that the AUSA for the closed and transferred W.D. Ky. firearms case called Mr. Wilson's former Kentucky attorney to have him tell Mr. Wilson to report back to prison because he was not supposed to have been released. It remains a mystery as to who initiated this call since that AUSA was either since fired or voluntarily resigned. Had the DOJ done its job, rather than writing on

February 6, 2025, that the pardon didn't apply (A235-37), they would have coordinated with Appellant's then attorney to dismiss the Motion for stay (A231-34) and admonished all who had interfered with Mr. Wilson's continued release.

The DOJ failed to file any motion in the D.D.C court for incarceration (and disclosed to this date nothing describing who and why anyone decided there was any error with Mr. Wilson' release). There was no administrative error – the President's transition team had compiled a list for all the prisons as to who was to be released on January 20, 2025. That list went through the BOP's sentencing computation center before release orders went to wardens. There was no administrative error that would have allowed the warden or anyone in DOJ to order Mr. Wilson back to prison. In this instance a motion was required, rather than the apparent pretense conveyed to Mr. Wilson' former and then attorney that there had been some type of administrative error.

The interim U.S. Attorney for D.C. and his AUSA mistakenly took it upon themselves to decide without authority that the Pardon did not apply to Mr. Wilson. (A235-37). This decision was made in early February without guidance from above, including the White House or review of the context of the entire pardon rather than the decorative, insufficient pardon certificate. The USAO D.C. referred only to the universal certificate that was issued to all defendants who submitted an email with their name and case number requesting the certificate. Upon being corrected by AG

level leadership in mid-February 2025, the government changed its position and conveyed to the court that the Pardon applied to Mr. Wilson. With no controversy, the judge demanded further supplementation about why the Pardon applied. At the conclusion of the February hearing, (A282-342), the judge acknowledged that both parties agreed. In her Opinion she wrote, "Because the government reversed its position and now agrees with the defendant's reading of the pardon, the Court proceeds without the benefit of adversarial briefing." (A267).

At that point, there was no longer a controversy, the case had already been closed, conviction was final, and the judge should have mooted the case with direction to the parties to go about their business. The district court is not the U.S. Supreme Court where an amicus is needed under the Supreme Court's published rules when a controversy exists but the government changes position after certiorari was granted for an important issue (that extends beyond the individual defendant) and then sides with the opponent. Here, the AUSA received direction from the Pardon execution authority when it filed the ordered supplemental.(A252-255). Yet Judge Friedrich inserted herself above the Article II authority with a compulsion to argue against President Trump in his preclusive authority under the Constitution.

When the Executive directed that January 6th searches were "related to" the events at or near the Capitol, that should have been the final word. Mr. Wilson would never have had his home searched and weapons discovered "but-for" the

investigation of him related to events of January 6, 2021. A reading of the full Complaint (Dkt. 1), the superseding indictment (A32-46), the government's sentencing memorandum with all the Telegram chat texts (Dkt. 67), and other investigation comments that show the FBI was targeting him because he associated with "Three percenters" and some had commented about possible civil war and disturbances after the January 20, 2021, inauguration.

Judge Friedrich put a stoplight in space and time as being at the Capitol and "January 6th. Yet the "commuted-only" defendants (Add.1) were charged with conspiracy; with court-approved evidence presented to juries and with government arguments that extended well past January 2021. For the Oath Keeper 1 trial, it is hard to discern when the government placed any end date on the alleged conspiracy. In the present case, the same could be said. Texts used as evidence bore no relation in space and time to the Capitol or January 6th. The judge ignored the Pardon's opening about "injustice" and reconciliation, as if they did not matter. There was only a judicially created controversy for the assertions Judge Friedrich raised in her Opinion. This Court should not give any deference to her decision because she operated outside the judiciary authority of the Constitution.

> According to express provision of Article III, the judicial power of the United States is limited to 'Cases' and 'Controversies.' See *Muskrat v. United States*, 219 U.S. 346, 356 (1911). In implementing this limited grant of power, we have refused to issue advisory opinions or to resolve disputes that are not justiciable.

*Mistretta v. United States*, 488 U.S. 361, 385 (1989) See, e. g., *Flast v. Cohen*, 392 U.S. 83 (1968); *United States v. Ferreira*, 13 How. 40 (1852). See also Add.4.

"And the judicial power to decide cases and controversies does not include the provision of purely advisory opinions to the Executive, or permit the federal courts to resolve nonjusticiable questions." *Clinton v. Jones*, 520 U.S. 681, 700 (1997).

For prior cases about pardons, none revolved around a judge deciding to give what amounted to what here can be viewed as an irrelevant advisory opinion. For example, "We therefore hold that the pardoning power is an enumerated power of the Constitution and that its limitations, if any, must be found in the Constitution itself." *Schick v. Reed*, 419 U.S. 256, 267 (1974). In that case, the defendant argued about the no parole condition imposed by the pardon that commuted his death sentence to life.

> So long as the President does not use the power to pardon to violate another provision of the Constitution, Congress and the Judiciary have no power to interfere with its exercise. Id. at 264, 266-67; see also Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 276, 118 S. Ct. 1244, 140 L. Ed. 2d 387 (1998) ("[P]ardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review.

Andrews v. Warden, 958 F.3d 1072, 1076-77 (11th Cir. 2020) (internal quotation marks omitted)).

When the DOJ in speaking for the Pardon executor wrote that the pardon applied (A252-55) the matter was done and moot. There was no controversy in  case already closed. There was no Article III jurisdiction. Even though the DOJ failed to

recognize this and move with Mr. Wilson to dismiss the stay motion that elicited the Pardon, the judge should have *sua sponte* dismissed the matter. Instead, she proceeded to pursue her previously made decision – without any further voice or due process for Mr. Wilson – that the Pardon didn't apply to him. The USAO D.C. stumbled around in the hearing (A292, 311, 330), first saying there was no ambiguity then flip-flopping as they also erroneously inferred they had interpreted the Pardon. Throughout, the interim U.S. Attorney for D.C. never admitted his previous mistake in interpreting the pardon without authority in early February as his AUSAs continued to argue that it should be evaluated by a standard as if it was a DOJ rule.

Because the court operated outside Article III authority when there was no longer a controversy, while the judge also applied an inapplicable standard, this Court should overturn the Order at A261-62. There is no utility in remanding the case for any further action at district court.

### C. The DOJ Failed to Use its Authority.

The DOJ has kept the pardoned Mr. Wilson unjustly incarcerated since April 2, 2025. In one sense, they appear paralyzed and impaired while awaiting a court order. The DOJ's BOP holding Mr. Wilson while awaiting (likely by internal policy) a court order violates President Trump's January 6th Pardon Proclamation. Judge Rao delivered a thoughtful dissent to the denial of Mr. Wilson' release pending the appeal where she wrote, "Because it is unlikely that the issuance of a certificate of pardon

is judicially reviewable, there is at least a 'substantial question' whether we should defer to the Department of Justice when it claims the certificate it has issued applies to Wilson's firearms convictions." Document #2109093 at 6. Clearly the Pardon Certificate was issued. There was no judicial interpretation needed, and the DOJ had the Court appoint an amicus because it would not argue for the lower court's decision. Yet the DOJ has not thoroughly researched the law and hasn't denounced its prior view that a Pardon can be treated like an administrative agency rule. The DOJ failed to own up to the truth that some DOJ personnel who never had authority claimed they "interpreted" the Pardon, with the USAO D.C. failing to even appear prepared for the hearing in February 2025. This led to Mr. Wilson being unjustly imprisoned. The DOJ released another similarly situated January 6 prisoner after January 20, 2025, without a court order. But now it acts impaired because it failed to bring to the lower court's attention that without controversy the matter should have been dismissed with no imprisonment order. After the Order the DOJ subordinated the President's Article II authority to the judiciary, failing to stand up and submit strong legal argument.

Because of the above, this Court should order Mr. Wilson released and direct the DOJ to close out the matter within its internal organization, such as the BOP.

The district court judge should have declared the matter moot because the DOJ said the pardon applied. There was no further controversy, and the court used

no standard to review outside of that for an executive order or an agency administrative rule – where a pardon is not that. The court had no jurisdiction to interpret the pardon, assess the pardon, or issue an Order. Because of the above, this Court must overturn the Order (A261-62) and Order Mr. Wilson released while noting that the DOJ should coordinate internally to close out the matter

## CONCLUSION

The non-complex facts that inform judicial review of the law that is the basis for this appeal and case show that the U.S. AG executing authority advised the U.S. Attorneys that the January 6th Pardon applies to defendants charged with contraband resulting directly and solely from the J6 searches. The U.S. AG office speaks for the President for his Pardon under Article II exclusive, conclusive, and preclusive authority. He is the sitting President who can impart any course corrections should he see fit. Judges do not get to decide who is being reasonable and who deserves deference when it comes to who falls under the Pardon. The judge had no authority to interpret President Trump's Pardon especially when there was no controversy for judicial jurisdiction for the judge to deny the Pardon's grace and benefit to Mr. Wilson or anyone else.

It was not within Article III authority for Judge Friedrich to step over the U.S. AG's back, violate Separation of Powers doctrine, create a controversy where she

entered her opinion about her interpretation in contradiction of the U.S. AG's direction; apply a standard never before applicable to a Presidential pardon, and impair the DOJ's implementation of the Pardon – all while unjustly denying Mr. Wilson his liberty. There is no due process, fairness, or justice when a judge violates the U.S. Constitution as occurred here.

If the Court were to somehow find this a close call, then the doctrine of lenity should be applied in favor of Mr. Wilson.

**WHERFORE,** because the Order denying Mr. Wilson a Pardon that was issued by the Executive under conclusive and preclusive authority, where the judge violated the Separation of Powers doctrine by broaching the Executive's Article II Constitutional authority, undermined Executive authority, and refused to defer to the Executive for his sole Article II authority; applied a standard as if the President's Executive Action fell under review such as that for an agency regulation under the Administrative Procedures Act; injected her opinion using inapplicable caselaw at the expense of Mr. Wilson's liberty, and caused impairment of Executive function in executing the Pardon while exceeding her authority by proceeding where no controversy existed, this Court should overturn the Order at A261-62, and grant approval to Mr. Wilson's Section 2255 by declaring the pardon applies and the Executive should release him from prison.

Respectfully submitted,

/s/ *Carolyn Stewart*
Carolyn A. Stewart
STEWART COUNTRY LAW PA
1204 Swilley Road
Plant City, Florida 33567
(813) 659-5178
carolstewart_esq@protonmail.com

George T. Pallas
GEORGE T. PALLAS, P.A.
2420 Coral Way
Miami, Florida
(305) 856-8580
george@pallaslaw.com

*Counsel for Defendant-Appellant*

# CERTIFICATE OF COMPLIANCE

1. I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) of the Federal Rules of Appellate Procedure. As measured by the undersigned's word-processing system used to prepare this brief, the brief contains 10,295 words.

2. This document complies with the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a 14 point proportionally spaced roman style typeface (Times New Roman).

November 5, 2025

*/s/ Carolyn Stewart*
Carolyn Stewart
Appellant's Counsel

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing.

The original and additional copies of the Brief and Appendix will be sent by express carrier for delivery as required by the rules, postage prepaid, addressed as follows:

Clerk's Office—Appeal No. 25-3041
U.S. Court of Appeals for the D.C. Circuit
E. Barrett Prettyman U.S. Courthouse
333 Constitution Ave., NW
Washington, DC 20001

November 5, 2025                    Respectfully submitted,

                                   /s/ *Carolyn Stewart*
                                   Carolyn Stewart
                                   Appellant's Attorney

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

January 20, 2025 Presidential Executive Action ............................................. Add.1

Proclamation 4483 ............................................................................ Add.2

Proclamation 179 ............................................................................. Add.3

U.S. Constitution Excerpts.................................................................. Add.4

Wilson Search Warrant Excerpt ........................................................... Add.5



PRESIDENTIAL ACTIONS

# GRANTING PARDONS AND COMMUTATION OF SENTENCES FOR CERTAIN OFFENSES RELATING TO THE EVENTS AT OR NEAR THE UNITED STATES CAPITOL ON JANUARY 6, 2021

The White House | January 20, 2025

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

This proclamation ends a grave national injustice that has been perpetrated upon the American people over the last four years and begins a process of national reconciliation.

Acting pursuant to the grant of authority in Article II, Section 2, of the Constitution of the United States, I do hereby:

(a)  commute the sentences of the following individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, to time served as of January 20, 2025:

- Stewart Rhodes
- Kelly Meggs
- Kenneth Harrelson
- Thomas Caldwell
- Jessica Watkins
- Roberto Minuta
- Edward Vallejo
- David Moerschel
- Joseph Hackett
- Ethan Nordean
- Joseph Biggs
- Zachary Rehl
- Dominic Pezzola
- Jeremy Bertino

(b)  grant a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021;

The Attorney General shall administer and effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above, and shall ensure that all individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, who are currently held in prison are released immediately.  The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive.

I further direct the Attorney General to pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021.  The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive.

    IN WITNESS WHEREOF, I have hereunto set my hand this

twentieth day of January, in the year of our Lord two thousand twenty-five, and of the Independence of the United States of America the two hundred and forty-ninth.

Add.1

# Office of the Federal Register (OFR)

Home > OFR > Codification > Proclamations

**Codification**

About the *Codification*
Alphabetical Index
Chapter Index
Numeric Index


Search the Codification

# Proclamations

**Proclamation 4483--Granting pardon for violations of the Selective Service Act, August 4, 1964, to March 28, 1973**

Source: The provisions of Proclamation 4483 of Jan. 21, 1977, appear at 42 FR 4391, 3 CFR, 1977 Comp., p. 4, unless otherwise noted.

Acting pursuant to the grant of authority in Article II, Section 2, of the Constitution of the United States, I, Jimmy Carter, President of the United States, do hereby grant a full, complete and unconditional pardon to: (1) all persons who may have committed any offense between August 4, 1964 and March 28, 1973 in violation of the Military Selective Service Act or any rule or regulation promulgated thereunder; and (2) all persons heretofore convicted, irrespective of the date of conviction, of any offense committed between August 4, 1964 and March 28, 1973 in violation of the Military Selective Service Act, or any rule or regulation promulgated thereunder, restoring to them full political, civil and other rights.

This pardon does not apply to the following who are specifically excluded therefrom:
(1) All persons convicted of or who may have committed any offense in violation of the Military Selective Service Act, or any rule or regulation promulgated thereunder, involving force or violence; and
(2) All persons convicted of or who may have committed any offense in violation of the Military Selective Service Act, or any rule or regulation promulgated thereunder, in connection with duties or responsibilities arising out of employment as agents, officers or employees of the Military Selective Service system.

IN WITNESS WHEREOF, I have hereunto set my hand this 21st day of January, in the year of our Lord nineteen hundred and seventy-seven, and of the Independence of the United States of America the two hundred and first.

This page was last reviewed on August 15, 2016.
*Contact us with questions or comments.*

**Information For...**
Citizen Archivists
Federal Employees
Genealogists
Members of Congress
Preservation
Records Managers
The Press

**Publications**
Today's *Federal Register*
Prologue Magazine
Subscribe to Email Newsletters
Blogs
All Publications

**Orgs. & Offices**
Center for Legislative Archives
Federal Records Center
Office of the Federal Register
Office of the Inspector General
Presidential Libraries
Staff Directory

**About Us**
What is the National Archives?
National Archives by the Numbers
Doing Business with Us
Plans and Reports
Open Government
Our Plain Language Activities

**I Want To...**
Get My Military Record
Plan a Research Visit
Visit the National Archives
View Online Exhibits
Apply for a Grant
Research Presidential Records
View Highlights from Our Holdings

**Participate**
Attend an Event
Donate to the Archives
Work at the Archives
Volunteer at the Archives

**Resources**
A-Z Index
America's Founding Docs
Contact Us
Social Media
En Español
FAQs
Forms

**Shop Online**
Visit the National Archives Store
Buy Reproductions and Microfilm

**CONNECT WITH US**


Contact Us · Accessibility · Privacy Policy · Freedom of Information Act · No FEAR Act · USA.gov

**The U.S. National Archives and Records Administration**
1-86-NARA-NARA or 1-866-272-6272

Add.2

# The American Presidency Project

DOCUMENTS   STATISTICS   MEDIA ARCHIVE   PRESIDENTS   ANALYSES   GIVE

## Documents

**ARCHIVE GUIDEBOOK**
**CATEGORIES**
**ATTRIBUTES**

## Categories

**PRESIDENTIAL (246676)** ▼

**REMARKS BY ADMINISTRATION OFFICIALS (186)**
**ELECTIONS AND TRANSITIONS (50265)** ▼

**CONGRESSIONAL (11)**



ANDREW JOHNSON

*17th President of the United States: 1865 - 1869*

# Proclamation 179—Granting Full Pardon and Amnesty for the Offense of Treason Against the United States During the Late Civil War

December 25, 1868

*By the President of the United States of America*

**A Proclamation**

Whereas the President of the United States has heretofore set forth several proclamations offering amnesty and pardon to persons who had been or were concerned in the late rebellion against the lawful authority of the Government of the United States, which proclamations were severally issued on the 8th day of December, 1863, on the 26th day of March, 1864, on the 29th day of May, 1865, on the 7th day of September, 1867, and on the 4th day of July, in the present year; and

Whereas the authority of the Federal Government having been reestablished in all the States and Territories within the jurisdiction of the United States, it is believed that such prudential reservations and exceptions as at the dates of said several proclamations were deemed necessary and proper may now be wisely and justly relinquished, and that an universal amnesty and pardon for participation in said rebellion extended to all who have borne any part therein will tend to secure permanent peace, order, and prosperity throughout the land, and to renew and fully restore confidence and fraternal feeling among the whole people, and their respect for and attachment to the National Government, designed by its patriotic founders for the general good:

Now, therefore, be it known that I, Andrew Johnson President of the United States, by virtue of the power and authority in me vested by the Constitution and in the name of the sovereign people of the United States, do hereby proclaim and declare unconditionally and without reservation, to all and to every person who, directly or indirectly, participated in the late insurrection or rebellion a full pardon and amnesty for the offense of treason against the United States or of adhering to their enemies during the late civil war, with restoration of all rights, privileges, and immunities under the Constitution and the laws which have been made in pursuance thereof.

In testimony whereof I have signed these presents with my hand and have caused the seal of the United States to be hereunto affixed.

Done at the city of Washington, the 25th day of December, A. D. 1868, and of the Independence of the United States of America the ninety-third.

ANDREW JOHNSON.

By the President:

F. W. SEWARD,

*Acting Secretary of State .*

Andrew Johnson, Proclamation 179—Granting Full Pardon and Amnesty for the Offense of Treason Against the United States During the Late Civil War Online by Gerhard Peters and John T. Woolley, The American Presidency Project https://www.presidency.ucsb.edu/node/203394

## FILED UNDER

**CATEGORIES**
Presidential
Written Presidential Orders
Proclamations

**ATTRIBUTES**
Proclamation

## SHARE

   

## SIMPLE SEARCH OF OUR ARCHIVES



REPORT A TYPO

The American Presidency Project
John Woolley and Gerhard Peters

**Contact**

 

Copyright © The American Presidency Project
**Terms of Service** | **Privacy** | **Accessibility**

UC **SANTA BARBARA**

# United States Constitution Excerpts[1]

## Article II Section. 2.

The President shall be Commander in Chief of the Army and Navy of the United States, and of the Militia of the several States, when called into the actual Service of the United States; he may require the Opinion, in writing, of the principal Officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices, and he shall have Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment.

He shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session.

## ARTICLE III Section. 2.

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;— between a State and Citizens of another State,— between Citizens of different States,—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

---

[1] From National Archives at https://www.archives.gov/founding-docs/constitution-transcript#2

Add.4

# UNITED STATES DISTRICT COURT
### for the
Western District of Kentucky

FILED

JAMES J. VILT JR,
CLERK

5/26/2022

U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

6500 Winterview Drive, Louisville, Kentucky 40242

)
)
)
)
)
)

Case No.   3:22-MJ-312

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Premises located at 6500 Winterview Drive, Louisville, Kentucky 40242 further identified in attachment A-1.

located in the _____Western_____ District of _____Kentucky_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1752(a)(1) & (2) | Disorderly and Disruptive Conduct in a Restricted Building or Grounds |
| 40 U.S.C. §§ 5104(e)(2)(D) & (G) | Disorderly Conduct in the Capitol Building |

The application is based on these facts:
See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Matthew R. Jaggers
_____
*Applicant's signature*

Special Agent, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____Telephone_____ *(specify reliable electronic means)*.

Date:   May 26, 2022

City and state:  Louisville, Kentucky

Colin H Lindsay, Magistrate Judge
*United States District Court*

Print    Save As...    Attach    Reset

USA-000446

to breach the building or to counter efforts by law-enforcement, such as pepper spray or smoke grenades;

n.    Evidence of communication devices, including closed circuit radios or walkie-talkies, that could have been used by co-conspirators to communicate during the unlawful entry into the U.S. Capitol;

o.    Evidence of the state of mind of the subject and/or other co-conspirators, e.g., intent, absence of mistake, or evidence indicating preparation or planning, or knowledge and experience, related to the criminal activity under investigation; and

p.    Evidence concerning the identity of persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the unlawful actors about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts.

2.    Evidence concerning efforts after the fact to conceal evidence of those offenses, or to flee prosecution for the same;

j.    Evidence concerning materials, devices, or tools that were used to unlawfully enter the U.S. Capitol by deceit or by force, including weapons and elements used to breach the building or to counter efforts by law-enforcement, such as pepper spray or smoke grenades;

k.    Evidence of communication devices, including closed circuit radios or walkie-talkies, that could have been used by co-conspirators to communicate during the unlawful entry into the U.S. Capitol;

l.    Evidence of the state of mind of the subject and/or other co-conspirators, e.g., intent, absence of mistake, or evidence indicating preparation or planning, or knowledge and experience, related to the criminal activity under investigation; and

**Particular Things to be Seized**

1.     The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of Title 18, United States Code, § 1752(a)(1) (Knowingly Entering or Remaining in any Restricted Building or Grounds) and (2) (Disorderly Conduct Which Impedes the Conduct of Government Business), and Title 40, United States Code, § 5104(e)(2)(D) (Disruptive Conduct in the Capitol Buildings) and (G) (Parading, Demonstrating, or Picketing in the Capitol Buildings) (the "Target Offenses") that have been committed by Wilson ("the Subject"), and other identified and unidentified persons, as described in the search warrant affidavit; including, but not limited to:

e.     Evidence concerning the breach and unlawful entry of the United States Capitol on January 6, 2021, including evidence concerning planning to unlawfully enter the U.S. Capitol, including any maps or diagrams of the building or its internal offices;

f.     Evidence concerning unlawful entry into the U.S. Capitol, including any property of the U.S. Capitol;

c.     Evidence concerning awareness of the official proceeding that was to take place at Congress on January 6, 2021, *i.e.*, the certification process of the 2020 Presidential Election;

d.     Evidence concerning the riot and/or civil disorder at the United States Capitol on January 6, 2021;

a.     Evidence of any conspiracy, planning, or preparation to commit those offenses;

b.     Evidence concerning efforts after the fact to conceal evidence of those offenses, or to flee prosecution for the same;

c.     Evidence concerning materials, devices, or tools that were used to unlawfully enter the U.S. Capitol by deceit or by force, including weapons and elements used

52

Add.7